NO. COA13-429

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

　　v.                                Chatham County
                                    No. 10 CRS 51652
KENNETH EUGENE ALSTON,
　　　　Defendant.


Appeal by defendant from judgment entered 17 December 2012 by Judge Allen Baddour in Chatham County Superior Court. Heard in the Court of Appeals 24 October 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General David P. Brenskelle, for the State.*
>
> *The Law Office of Bruce T. Cunningham, Jr., by Bruce T. Cunningham, Jr., for defendant-appellant.*


GEER, Judge.


Defendant Kenneth Eugene Alston appeals from his conviction of robbery with a dangerous weapon. On appeal, defendant primarily contends that he received ineffective assistance of counsel ("IAC") when his trial counsel failed to object to the joinder for trial of defendant's charges of robbery with a dangerous weapon and possession of a firearm by a felon. Defendant argues that the statute prohibiting possession of a firearm by a felon is a "civil regulatory measure" and,

therefore, a violation of that statute may not be joined for trial with a criminal offense.

While our Supreme Court has held that the ban on felons possessing firearms does not impose additional punishment for prior convictions because the General Assembly adopted the prohibition as a civil regulatory measure, that holding does not in any way mean that a violation of that civil regulatory measure cannot be a crime. As both the Supreme Court and this Court have previously recognized, when a felon possesses a firearm, he commits a crime. Consequently, we hold defendant did not receive IAC when his trial counsel failed to object to the joinder of the charges brought against defendant.

## Facts

The State's evidence tended to show the following facts. At some point between 22 July 2010 and 25 July 2010, Chad Taylor called an acquaintance, Calvin Moore, and told Moore that he wanted to sell some marijuana. Moore told defendant about the offer, but did not tell defendant that Taylor, defendant's distant cousin, was the seller. In the evening of 25 July 2010, Taylor and Moore agreed by phone that Taylor would sell Moore three pounds of marijuana.

Late in the night on 25 July or early in the morning on 26 July 2010, defendant drove Moore and three young women,

including Tiffany Jarrell, to the house where the drug deal was to take place. Defendant, Moore, and the women all agreed in advance that they would rob the sellers rather than purchase the marijuana. As defendant neared the house, he realized that the house belonged to one of his family members. Defendant nonetheless decided to go forward with the robbery. Defendant parked at the house, and defendant and Moore got out and talked to Taylor and Taylor's friend, Jesus Sifuentes.

Sifuentes left the house in his car and then returned in 10 or 15 minutes with the marijuana. Sifuentes handed Moore the marijuana, and defendant and Moore then pulled out handguns and aimed them at Taylor and Sifuentes. Jarrell and the other women then searched Taylor's and Sifuentes' pockets and took wallets, cell phones, and about $1,500.00 in cash, as well as the marijuana. The robbers then left in defendant's car with defendant driving.

After the robbers left, Taylor got a shotgun and Sifuentes and Taylor chased the robbers in Sifuentes' car. Sifuentes and Taylor caught up with the robbers on the highway, and Sifuentes drove his car into the back of defendant's car, causing both cars to wreck. After the crash, the robbers believed Taylor and Sifuentes had fled, and defendant decided to stay with his car and to tell the police that he was involved in a hit and run.

Defendant convinced Jarrell to stay with the car as well. Moore and the other two women called a friend and got a ride home. Moore took the marijuana and the two guns used in the robbery with him.

Defendant and Jarrell went to the hospital, and a nurse at the hospital discovered the cash proceeds from the robbery in Jarrell's underwear. Jarrell lied about where she got the money. Jarrell then went to the police station, where she also lied to the police about what had occurred.

Defendant was indicted for accessory after the fact to robbery with a dangerous weapon on 10 October 2011 and for possession of a firearm by a felon on 21 May 2012. Defendant was also indicted for robbery with a dangerous weapon.[1] The jury found defendant guilty of robbery with a dangerous weapon and, accordingly, did not render a verdict with respect to the accessory after the fact charge. However, the jury found defendant not guilty of possession of a firearm by a felon. In an amended judgment, the court sentenced defendant to an aggravated-range term of 152 to 192 months imprisonment. Defendant timely appealed to this Court.

I

---

[1]The record on appeal does not contain defendant's indictment for robbery with a dangerous weapon. However, the transcript indicates defendant was indicted for that offense.

Defendant first contends that the trial court erroneously joined for trial defendant's charges of robbery with a dangerous weapon and possession of a firearm by a felon. Defendant argues that the latter charge was for violation of a "civil regulatory measure" that could not be properly tried alongside a criminal offense.

Defendant did not make his joinder argument to the trial court, but he argues on appeal that the trial court committed plain error in the joinder. However, our Supreme Court has expressly held that plain error review does not apply to the issue whether joinder of charges was appropriate. *State v. Golphin*, 352 N.C. 364, 460, 533 S.E.2d 168, 230-31 (2000). Consequently, due to defendant's failure to preserve this issue for review, it is not properly before this Court.

Defendant alternatively argues that he received IAC due to his counsel's failure to object to the joinder of the charges of robbery with a dangerous weapon and possession of a firearm by a felon. Defendant must satisfy a two-part test in order to prevail on his IAC claim:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (emphasis omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)).

Defendant argues that his counsel's performance was deficient because, in *State v. Whitaker*, 364 N.C. 404, 411, 700 S.E.2d 215, 220 (2010), our Supreme Court held that the statute prohibiting possession of a firearm by a felon is a "civil regulatory measure" rather than a criminal offense, and, according to defendant, it is inherently improper to try a criminal offense together with a civil regulatory matter. Defendant asserts that his trial counsel should have been aware of *Whitaker*, a "well-known" case decided roughly two years before defendant's trial, since "Second Amendment litigation has been the topic of much discussion in the last several years and *Whitaker* was relevant to that discussion."

In *Whitaker*, our Supreme Court rejected the defendant's argument that an amendment broadening the scope of the statute making it unlawful for felons to possess firearms, N.C. Gen. Stat. § 14-415.1 (2013), was an unconstitutional *ex post facto law*. 364 N.C. at 411, 700 S.E.2d at 220. The Court first noted, with respect to *ex post facto* principles, that the

defendant had not been retroactively punished for an act that was innocent when committed since the "defendant's conviction [was] for an *offense* that he committed after his actions were deemed *criminal*, namely the possession of any firearm by a felon." *Id.* at 408, 700 S.E.2d at 218 (emphasis added). The Court explained that "[t]he question then becomes whether the 2004 amendment to N.C.G.S. § 14-415.1 is an ex post facto law, *not because it imposes punishment for future acts*, but because it prohibits the possession of firearms by a convicted felon, which defendant asserts operates as a form of enhanced punishment for his prior felonies." *Id.* (emphasis added).

In other words, the issue before the Supreme Court was whether denying a defendant the right to have firearms was additional punishment for a prior conviction. As to that issue, the Court concluded that the General Assembly had a "nonpunitive intent" in enacting the amended statute "to protect the public." *Id.* at 409, 700 S.E.2d at 218. Ultimately, the Court concluded that "the General Assembly's purpose in enacting" the ban on felons possessing firearms "was to establish a civil regulatory measure, and because the amended statute's effect does not render it punitive in nature, the amended N.C.G.S. § 14-415.1 is not an unconstitutional ex post facto law." *Id.* at 411, 700 S.E.2d at 220.

Although *Whitaker* holds that the statute depriving felons of the right to possess firearms is a civil regulatory measure not intended to further punish people previously convicted, nothing in *Whitaker* suggests that a violation of that statutory prohibition is not a crime. Defendant has cited no authority that a legislature may not make it a crime to violate a statute that was enacted for a "civil regulatory" purpose.

Indeed, the *Whitaker* Court referred to the defendant felon's act of possessing a firearm as an "offense" that was deemed "criminal" by the relevant statutory amendment. *Id.* at 408, 700 S.E.2d at 218. Further, contrary to defendant's argument, N.C. Gen. Stat. § 14-415.1(a) provides that "[e]very person violating the provisions of this section shall be punished *as a Class G felon*." (Emphasis added.) *See also Johnston v. State*, ___ N.C. App. ___, ___, 735 S.E.2d 859, 876 (2012) (explaining that in N.C. Gen. Stat. § 14-415.1, "[o]ur legislature mandated that any felon found in possession of a firearm is subject to *criminal liability*" (emphasis added)), *aff'd per curiam*, ___ N.C. ___, 749 S.E.2d 278 (2013); *State v. Johnson*, 169 N.C. App. 301, 306, 610 S.E.2d 739, 743 (2005) (holding, in rejecting *ex post facto* argument, that "*the crime* for which defendant is being punished is his violation of N.C. Gen. Stat. 14-415.1" (emphasis added)).

In sum, given the statutory language designating possession of a firearm by a felon as a crime, our Supreme Court's reference to a violation of N.C. Gen. Stat. § 14-415.1 as a "criminal" "offense" in *Whitaker*, and this Court's similar language in *Johnson* and *Johnston*, we conclude that possession of a firearm by a felon is a criminal offense that was properly joined for trial with another criminal offense, robbery with a dangerous weapon. Since there was no error in the joinder decision, defense counsel's failure to object to the joinder did not constitute deficient performance, and defendant has failed to show he received IAC.

## II

Defendant also contends that he received IAC when his trial counsel failed to prevent the jury from hearing the prejudicial information that defendant had a prior felony conviction by using the procedure set out in N.C. Gen. Stat. § 15A-928 (2013). According to defendant, under N.C. Gen. Stat. § 15A-928, he could have stipulated to the prior conviction and thereby precluded the State from introducing evidence regarding that conviction. We disagree.

Defendant's argument fails to recognize that N.C. Gen. Stat. § 15A-928(a) limits the statute's applicability as follows: "When the fact that the defendant has been previously

convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter, an indictment or information for the higher offense may not allege the previous conviction." When those circumstances apply, then N.C. Gen. Stat. § 15A-928(c)(1) provides that "[i]f the defendant admits the previous conviction, that element of the offense charged in the indictment or information is established, no evidence in support thereof may be adduced by the State, and the judge must submit the case to the jury without reference thereto and as if the fact of such previous conviction were not an element of the offense. The court may not submit to the jury any lesser included offense which is distinguished from the offense charged solely by the fact that a previous conviction is not an element thereof."

This Court has previously held that N.C. Gen. Stat. § 15A-928 does not apply to the offense of possession of a firearm by a felon. *State v. Jeffers*, 48 N.C. App. 663, 665-66, 269 S.E.2d 731, 733-34 (1980). The Court in *Jeffers* reasoned:

> Since the trial judge allowed the stipulation as to the previous conviction to be introduced and since he made reference to the stipulation in his charge to the jury, defendant claims that G.S. 15A-928(c)(1) was violated, and that defendant was deprived of his right to a fair trial as a result. G.S. 15A-928, however, is not applicable in this case. The statute applies solely to cases in which the fact that the accused had a

> prior conviction raises an offense of "lower grade" to one of "higher grade." G.S. 15A-928(a). Thus, the prior conviction serves to increase the punishment available for the offense above what it would ordinarily be. *See State v. Moore*, [27 N.C. App. 245, 218 S.E.2d 496 (1975).] The offense charged in the instant case, however, does not have this characteristic. A previous conviction for one of a group of enumerated felonies is an essential element of the offense of possession of a firearm by a felon, and thus in the absence of a prior conviction, there is no offense at all. G.S. 14-415.1; *State v. Cobb*, 284 N.C. 573, 201 S.E.2d 878 (1974). Also, the statute contains nothing as to certain convictions being more intolerable than others, G.S. 14-415.1(a) and (b), and thus no "lower grade"--"higher grade" dichotomy can be ascertained.

*Id.*

*Jeffers* controls in this case. We, therefore, conclude that defendant has failed to show IAC for failure to raise N.C. Gen. Stat. § 15A-928 at trial because that statute did not apply to his trial for possession of a firearm by a felon. *See also State v. Jackson*, 306 N.C. 642, 652, 295 S.E.2d 383, 389 (1982) (holding that N.C. Gen. Stat. § 15A-928 did not apply to offense at issue because "[t]he statute applies solely to cases in which the fact that the accused 'has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter'" (quoting N.C. Gen. Stat. § 15A-928(a))).

III

Defendant next argues that the trial court violated his Sixth Amendment right to cross-examination when it did not permit him to cross-examine two of the State's witnesses, Moore and Jarrell, about criminal charges pending against them in counties in different prosecutorial districts than the district in which defendant was tried. We disagree.

During voir dire, Jarrell stated that she had a pending charge in Randolph County for assault with a deadly weapon with intent to kill. Jarrell testified on cross-examination that she did not believe that by cooperating with the State in this case she could "gain anything in any other proceedings" in other counties. Since Jarrell stated she did not believe that testifying in this case would help her with matters in other counties, the trial court did not permit defendant to further cross-examine Jarrell about pending charges in other counties.

Moore testified on voir dire that he had "a few" felony breaking and entering charges and one felony larceny charge pending in Guilford County, three felony breaking and entering charges and one felony larceny charge pending in Moore County, and a probation violation report pending in Randolph County. Moore also testified on voir dire that he did not believe testifying for the State in this case would benefit him with respect to the matters in other counties. Given this voir dire

testimony, the court ruled that defendant could only ask Moore on cross-examination whether he believed he would receive any benefit in other counties for his cooperation in this case. The court further ruled, however, that defendant could cross-examine Moore about unrelated pending charges in Chatham County and about the pending probation violation report in Randolph County since that probation matter was included as part of Moore's original plea agreement with the State.

The Sixth Amendment right to confrontation generally protects the right of a criminal defendant to cross-examine a State's witness about the existence of pending charges in the same prosecutorial district as the trial in order to show bias in favor of the State, since the jury may understand that pending charges may be used by the State as a "weapon to control the witness." *State v. Prevatte*, 346 N.C. 162, 164, 484 S.E.2d 377, 378 (1997). However, "'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *State v. McNeil*, 350 N.C. 657, 677, 518 S.E.2d 486, 499 (1999) (quoting *Delaware v.*

*Van Arsdall*, 475 U.S. 673, 679, 89 L. Ed. 2d 674, 683, 106 S. Ct. 1431, 1435 (1986)).

Given this wide latitude afforded trial courts, we review a trial court's limitation of cross-examination for an abuse of discretion. *Id.* "'A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Garcell*, 363 N.C. 10, 27, 678 S.E.2d 618, 630 (2009) (quoting *State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007)).

In *State v. Murrell*, 362 N.C. 375, 403, 665 S.E.2d 61, 80 (2008), a case out of Forsyth County, the defendant filed a motion for appropriate relief arguing that "the prosecution allowed State's witness . . . to perjure himself concerning his prior convictions, current charges, and discussions with the Durham County District Attorney's office." Regarding the defendant's argument that the witness falsely testified he had no pending charges in Durham County, the Supreme Court held the witness' testimony was in fact true since the record showed that the witness' Durham County charges had been dismissed, although they were subject to reinstatement, at the time of the challenged testimony. *Id.* at 404, 665 S.E.2d at 80.

The Court further held that, even assuming arguendo that the testimony was false and that the defendant was able to prove the prosecution knew it was false, "[the witness'] testimony on this peripheral issue concerning charges dismissed in another district attorney's jurisdiction was simply not material." *Id.* The *Murrell* Court reasoned that unlike *Prevatte*, 346 N.C. at 163-64, 484 S.E.2d at 378, "in which the State's witness faced pending charges within the *same* jurisdiction in which he testified, any charges pending against [the witness] were being handled in a different jurisdiction, and defendant provides no supporting documentation of any discussion between the two district attorneys' offices to demonstrate that [the witness'] testimony was biased in this respect." 362 N.C. at 404, 665 S.E.2d at 80.

Here, at the outset, we take judicial notice that Guilford, Randolph, and Moore Counties are each located in different prosecutorial districts than Chatham County, where this case was tried. As in *Murrell*, defendant has failed to provide any evidence of discussions between the district attorney's office in Chatham County and district attorneys' offices in the other counties where Jarrell and Moore had pending charges. In addition, Jarrell testified on cross-examination and Moore testified on voir dire that each did not believe testifying in

this case could help them in any way with proceedings in other counties. Under these circumstances, we follow the reasoning of *Murrell* and conclude that, in this case, testimony regarding the witnesses' pending charges in other counties was, at best, marginally relevant to defendant's trial.

Moreover, both Jarrell and Moore were thoroughly impeached on a number of other bases separate from their pending charges in other counties. Jarrell acknowledged that she was testifying pursuant to a plea agreement in which her pending charges for robbery with a dangerous weapon and accessory after the fact to robbery with a dangerous weapon in Chatham County would be dismissed and she would plead guilty to obstruction of justice. Pursuant to the agreement, the State agreed to recommend that Jarrell be placed on probation rather than serve active time. At the time of her testimony, Jarrell was currently in prison for misdemeanor assault with a deadly weapon and driving while impaired. Jarrell also testified to her prior convictions for "possessing or manufacturing a fraudulent ID," driving after consuming alcohol, and resisting a public officer.

Jarrell further testified that she made false statements about the events surrounding the robbery to an investigating officer on the night of the robbery in order to avoid being charged with a crime. She admitted lying at the hospital about

the source of the money in her underwear that was, in fact, the cash proceeds from the robbery. Jarrell also testified that, on the night of the robbery, she was drunk and she had taken Xanax without a prescription and smoked marijuana. Jarrell, 20 years old at the time of trial, additionally stated that she had regularly smoked marijuana since she was 14 years old and, as a result, sometimes her memory was "off."

At the time he testified, Moore was on probation for convictions on "a number of felonies" in Randolph County and, if he violated his probation, he faced 69 to 84 months imprisonment. Moore testified that he had previously pled guilty, pursuant to a plea agreement, to robbery with a dangerous weapon and possession of a firearm by a felon stemming from the robbery in this case. He was awaiting his sentence on those charges, which could have been up to 201 months imprisonment. Moore stated that, pursuant to that same agreement, he pled guilty to unrelated charges for obtaining property by false pretenses and for two counts of identity theft, all felonies. Pursuant to that agreement, the State would recommend Moore be sentenced at the bottom of the mitigated range, and his sentence on those felonies would run concurrently with a suspended prison sentence from Randolph County for which Moore had been on probation. Also pursuant to

that plea agreement, the State dismissed charges against Moore for larceny, financial card fraud, possession of stolen goods, driving while license revoked, resisting a public officer, obtaining property by false pretenses, and two counts of breaking and entering. Moore testified that his written plea agreement with the State was his only agreement with the State.

Moore additionally testified that at the time of trial he understood that if he withdrew his guilty pleas, the State could reinstate all the dismissed charges and could also recommend to the sentencing court that the sentences on the charges to which he had pled guilty run consecutively. Further, Moore recognized that if he withdrew his plea, there was a possibility that he would be sentenced in the aggravated rather than the mitigated range. Moore also testified that he understood he had voided his plea agreement with the State by twice absconding from North Carolina. With respect to the latter issue, Moore had been charged with two counts of felony failure to appear. Also at the time of trial, Moore had two misdemeanor charges pending in Chatham County for resisting a public officer and communicating threats.

In addition, Moore, who was 23 years old at the time of trial, testified that he had three prior convictions of possession of cocaine, three prior convictions of possession

with intent to sell and deliver cocaine, two prior convictions of felony larceny, two prior convictions of unauthorized use of a motor vehicle, two prior convictions of breaking and entering, three prior convictions of misdemeanor larceny, and prior convictions of possession of a firearm by a felon, possession of stolen goods, hit and run with property damage, and fleeing to elude arrest.

In sum, the trial court allowed defendant extensive cross-examination of both Jarrell and Moore, revealing their bias to testify favorably for the State in order to curry favor regarding their pending charges and sentences, respectively, for the robbery in this case and, for Moore, numerous other pending charges. Defendant was also permitted to cross-examine the witnesses on a host of other matters relating to their credibility. Based on this thorough cross-examination and the marginal relevance, if any, of cross-examination regarding Jarrell and Moore's pending charges in other counties, we hold that the trial court was not unreasonable in barring defendant from further cross-examining the witnesses regarding their pending charges in other counties.

IV

Defendant's final argument is that the prosecutor's remarks during the sentencing hearing that defendant was trying to

derail the prosecution violated defendant's Sixth Amendment right to confrontation and his Fourteenth Amendment right to due process. The prosecutor's remarks referred, in part, to an incident of alleged juror misconduct during trial.

During trial and outside the presence of the jury, a trial spectator, Michael Stanley, presented himself to the court and stated that the previous evening he had been in the parking lot outside the courthouse attempting to jump start his car and, while doing so, spoke with a woman he recognized as a juror. In the course of the conversation, the juror told Mr. Stanley that she and a friend "felt like [defendant] was guilty." Mr. Stanley was never placed under oath.

The jury then entered the courtroom, and the trial court instructed the jurors to raise their hand if they had spoken to Mr. Stanley about the case. In response, juror number six stated that Mr. Stanley's truck hood was up, and he asked her "something about jumper cables." She told him that she did not have any, but there was a nearby fire department where he might find help. She reported to the court that she "didn't say anything to him about the case." Juror number six was not sworn prior to making these statements. No other juror indicated they had spoken with Mr. Stanley.

During a subsequent break in the trial, the trial court brought up the issue of the juror's alleged comment to Mr. Stanley and stated it was satisfied by juror number six's response. Defense counsel stated that if the juror denied any misconduct, he had nothing else to offer. The court then determined that the matter was settled.

Later the same day, after the jury had been given its final charge and was deliberating, the trial court announced that it had learned that a deputy had observed Mr. Stanley the previous day and that it was "appropriate to put on the record what the deputy saw." Deputy Raymond Barrios was then sworn and testified that the previous evening, the deputy went outside to the court parking lot at about 5:20 p.m. and saw Mr. Stanley on his cell phone standing by the lot. As Deputy Barrios got near, Mr. Stanley walked away, still on his phone, towards a court "overflow" parking lot across the street.

Deputy Barrios further testified that as Mr. Stanley walked across the street, the deputy noticed a car parked at the farthest end of the parking lot "flashing [its] lights like a signal." The deputy then reentered the courthouse, and when he later left the courthouse to walk to his car, he saw Mr. Stanley "talking to the defendant in the parking lot further up the

road" for about five minutes. Defendant declined the opportunity to question Deputy Barrios.

Defendant now challenges the prosecutor's sentencing argument regarding the interaction between Mr. Stanley and the juror. The prosecutor argued the following at sentencing:

> In addition, we had this unusual situation where we had one of [defendant's] old -- apparently -- cell mates who was also convicted of armed robbery come and watch the trial this week and make a statement to the Court implying the jury had already reached a decision -- or at least a jury member had already reached a decision in the case. We feel that that was, again, orchestrated by [defendant] based on the sworn testimony of deputy Barrios [sic] who said that he observed the defendant and this person, Mr. Stanley, interacting outside of the court signaling to -- the defendant signaling to Mr. Stanley after court. And it appears to me that that was a blatant attempt to derail or obstruct justice in this case by creating an atmosphere where we might have to grant a mistrial if his statement was to be believed. Of course the Court addressed that, talked to the jury. It was clear that none of them had had any conversation of that type with Mr. Stanley.
>
> And that's just the continuing kind of thing that we have seen over the last couple of years. [Defendant] never does anything overtly threatening, and we don't have any evidence that money has changed hands, but certainly we have evidence and information through what's been happening in court and out of court that he has persistently tried to work to derail this prosecution.
>
> . . . .

> . . . I have never experienced such a situation as -- as this where we have so many external factors attempting to derail justice in this case. And I think all of those were driven by [defendant].

The State then asked the court to sentence defendant "to the top of the aggravated range for a Class D felony," which amounted to 160 to 201 months imprisonment.

Following the parties' sentencing arguments, the trial court briefly found the existence of two aggravating factors admitted by defendant, found the existence of one mitigating factor, and determined that the aggravating factors outweighed the mitigating factor. The court then, without any discussion of defendant's "derail[ing]" justice, sentenced defendant to an aggravated-range term of 152 to 191 months imprisonment.[2] After sentencing, the trial court stated to defendant: "I do think this is probably an event that could have been avoided at many points along the way; and, [defendant], I think that you bear some responsibility for that. I'm not saying you are the only one who does, but you do."

Defendant now argues that his right to confrontation under the Sixth Amendment was violated because he was not given the opportunity to question Mr. Stanley and juror number six.

---

[2]The trial court later entered an amended judgment to correct a clerical error, and in the amended judgment the court sentenced defendant to an aggravated-range term of 152 to 192 months imprisonment.

Defendant did not, however, object to the process during which Mr. Stanley and juror number six gave unsworn statements, did not request that those individuals be sworn, and did not request the opportunity to question them. Consequently, defendant has not preserved his confrontation argument for appeal. *See* N.C.R. App. P. 10(a)(1); *State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002) (holding defendant waived constitutional confrontation argument by failing to object on confrontation grounds below since, generally, "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal").

Defendant further contends that the challenged arguments by the prosecutor regarding defendant's attempts to derail justice in this case by having Mr. Stanley tamper with juror number six were "unsubstantiated" and "speculative" and thereby violated his right to due process under the Fourteenth Amendment. We disagree.

At trial, Jarrell testified that, prior to trial, defendant told her not to say anything to investigators because defendant had talked to the victims Sifuentes and Taylor and the victims, being drug dealers, were unlikely to testify against defendant and Jarrell. Defendant also told Jarrell that he and Jarrell should try to pay the victims to keep them from testifying.

Finally, Jarrell testified that, prior to trial, defendant had attempted to facilitate getting Jarrell's mother out of jail, leading to the inference that defendant was trying to curry favor with Jarrell to keep her from testifying against him.

Moore testified that prior to trial he felt threatened or coerced not to testify, although "not directly from [defendant]." Moore stated that prior to trial he was released from prison and was on house arrest for 120 days. During this time, he took a plea deal with the State requiring him to testify against defendant. Just before Moore was set to be released from house arrest, however, he fled to Florida because he was concerned for his safety after receiving information from people in the community. Moore was subsequently arrested and brought back to North Carolina, where he was released on bond. However, based on a phone call shortly after he was released, Moore again fled, this time to South Carolina. From this evidence, the prosecutor was entitled to argue the inference that defendant was indirectly threatening Moore to keep Moore from testifying.

Sifuentes testified that he saw defendant come to Sifuentes' father's place of business and interact with Sifuentes' father. Later, defendant went to Sifuentes' father's house while Sifuentes was there, and defendant spoke to

Sifuentes' father outside the house before leaving. Seeing defendant at his father's house made Sifuentes nervous.

The record additionally contains unsworn statements by Mr. Stanley and juror number six about whether a juror improperly discussed the case with Mr. Stanley and, apart from the truth or falsity of either person's statement, the important, uncontested fact is that the trial court was addressed by a spectator, Mr. Stanley, about a juror improperly discussing the merits of the case. This fact, coupled with Deputy Barrios' sworn testimony that he witnessed Mr. Stanley communicate with someone in a car in the parking lot on the same day that Mr. Stanley reported juror misconduct and, later the same evening, saw defendant talking with Mr. Stanley in the parking lot for about five minutes, raises the inference that defendant was involved in Mr. Stanley's report of juror misconduct to the trial court.

The record, therefore, supports the great majority of the prosecutor's sentencing argument about defendant's attempts to derail justice in this case. We have found no record support, however, for the prosecutor's assertion that Mr. Stanley was defendant's old cell mate who had also been convicted of armed robbery.

Even assuming, without deciding, that defendant has shown that the sole unsubstantiated statement by the prosecutor at

sentencing amounted to a denial of due process, any constitutional error is harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443(b) (2013). The vast majority of the prosecutor's sentencing argument that defendant was attempting to derail justice in this case is supported by the record. Moreover, the prosecutor properly argued to the court the two admitted aggravating factors, defendant's three prior robbery with a dangerous weapon and one attempted robbery with a dangerous weapon convictions, defendant's four prior felony drug-related convictions, and defendant's refusal to call off the robbery even when he realized the scene of the robbery was his relative's house. The trial court's comments to defendant after sentencing suggest that the court placed emphasis on defendant's failure to call off the robbery despite having the opportunity to do so.

The trial court gave no indication that, when sentencing defendant, it considered the isolated unsupported statement about Mr. Stanley being defendant's former cell mate with a prior conviction of armed robbery. Rather, the court simply stated that it found the existence of the two aggravating factors admitted by defendant and that those factors outweighed the single mitigating factor. The only other circumstance

specifically referred to by the court was defendant's failure to call off the robbery when he had the opportunity to do so.

Under these circumstances, and given the weight of the State's proper sentencing arguments, we hold that any error in the court's consideration of the single unsupported statement was harmless beyond a reasonable doubt. *See State v. Jackson*, 91 N.C. App. 124, 126, 370 S.E.2d 687, 688 (1988) (holding that any error in trial court's consideration of murder victim's two sisters' impact statements describing sisters' thoughts about sentencing, including that defendant acted in cold blood and deserved maximum sentence available, was harmless since "the court certainly knew before then, as every reasonably knowledgeable person knows, that almost invariably relatives and friends of murder victims are shocked and saddened by their killing and are of the opinion that murderers should be severely punished"). Consequently, we conclude defendant received a trial free from prejudicial error.

No error.

Judges STEPHENS and ERVIN concur.