EARLS, Justice.
**440 At defendant Duval Bowman's trial for the 2014 murder of Anthony Johnson, Lakenda Malachi was the only witness to provide direct evidence of Bowman's presence at the scene. Bowman sought to impeach Malachi's testimony by introducing evidence that Malachi was in plea negotiations over pending charges against her and that she would receive favorable treatment for her testimony against Bowman, but the trial court sustained objections to defense counsel's questions. Bowman was found guilty of attempted robbery with a dangerous weapon, possession of a firearm by a felon, and the first-degree murder of Anthony Johnson. He was sentenced to life imprisonment without parole.
Defendant argued at the Court of Appeals that the trial court committed reversible error by preventing his counsel from adequately cross-examining Malachi regarding the pending charges. The Court of Appeals' majority agreed with defendant, holding that the trial court committed constitutional error by restricting defendant's cross-examination of Malachi and that the error was not harmless beyond a reasonable doubt. State v. Bowman , --- N.C.App. ----, 818 S.E.2d 718, 719 (2018). Judge Dillon agreed that the trial court erred by limiting the cross-examination of Malachi but concluded the error was harmless beyond a reasonable doubt. Id. at 722 (Dillon, J., dissenting). The State filed its appeal of right based on Judge Dillon's dissenting opinion. We must now determine whether the trial court violated defendant's Sixth Amendment right to confront witnesses against him by limiting defendant's cross-examination of the State's principal witness and whether that error was harmless beyond a reasonable doubt. Because we agree that the trial court committed prejudicial error, we affirm the Court of Appeals' holding and its order that defendant receive a new trial.
Factual and Procedural Background
A. Facts
Defendant, Johnson, and Malachi were all involved in the illicit drug business. Around the time of his murder, Johnson was engaged *318 to Malachi and they lived together with their four-year-old son. At trial, the State presented no physical evidence linking defendant to the shooting but argued that Malachi's testimony established defendant's guilt. Defendant also testified at trial, denying his involvement in the murder, and raising the suggestion that Malachi may have murdered Johnson. Necessarily either defendant or Malachi must have been misrepresenting essential facts about Johnson's death.
According to Malachi's trial testimony, around 3:00 a.m. on 23 February 2014, defendant went to Malachi's house to confront Johnson about **441 money he owed defendant. Once in the living room where Johnson and Malachi were on the couch, defendant asked Malachi, "Where your gun at?" Defendant was referring to Malachi's 9-millimeter, semiautomatic pistol. Malachi told defendant she had her gun on her, but she was lying to him. Malachi then looked on the shelf in the living room where she normally kept her weapon, but did not see it there. Malachi testified that she left the living room to look for the gun but turned around and saw defendant wearing white latex gloves and holding a gun in each hand. Defendant was standing over Johnson and stated, "Ya'll did me dirty." Malachi turned and ran to her bedroom and heard shots being fired as she ran away. She also heard defendant rattling things in the living room. Malachi then ran to the couple's son's room, locked the door, and hid in the closet. The couple's son was asleep in his bedroom when defendant kicked in the door then walked towards the son's bed. Upon seeing this, Malachi came out of the closet and told defendant that she would find the money for him. The couple's son continued to sleep throughout the encounter.
Malachi asked Johnson where the money was before defendant began stomping on Johnson as he lay motionless on the floor. As Malachi looked for the money, defendant hit her with the two handguns and threatened to shoot her in the feet. Defendant said he was going to kill Johnson and walked into the kitchen. Seeing her chance to escape, Malachi ran out of the house and hid near her neighbor's house until she saw what appeared to be a green station wagon drive away from her house. Malachi then rang her neighbor's doorbell until they responded. Once inside, Malachi asked to use their telephone and made calls to two different male friends whom she hoped would come pick up her son before police arrived. The neighbors called the police after Malachi finished her calls.
Johnson was pronounced dead when police arrived. He had been shot once in the leg and twice in the back. A revolver was used in the killing, as well as a 9-millimeter, semiautomatic pistol, but the police found no guns. They did find a box for a 9-millimeter Glock handgun in a shoe box on the top shelf of the closet in the master bedroom, along with various rounds of ammunition, a handgun magazine, and a receipt for the purchase of the gun. A gunshot residue test on Malachi's hands showed some amounts of lead, antimony, and barium but overall was an inconclusive result. However, Malachi had washed her hands while at the neighbor's house. Bowman was apprehended three weeks later in New York and denied any involvement in Johnson's death.
**442 At trial, defendant denied murdering Johnson. Defendant also testified that Malachi and Johnson had a violent relationship and that Malachi carried a gun. Malachi was jealous of Johnson because he cheated on her and she would become physically violent with Johnson. She was particularly violent when she drank alcohol. Malachi admitted that she drank alcohol the night of Johnson's murder. A few weeks before the murder, Malachi was upset with Johnson over another woman who was at a liquor house with him.
On the night in question, defendant went to a liquor house around 11:00 p.m. Defendant then met a friend named Lorenzo Peace around 11:30 p.m. Peace had defendant drop him off at a friend's house before defendant drove back to the liquor house in Peace's vehicle. Around midnight, defendant left the liquor house to conduct a drug transaction with a man named Jay. Afterwards, defendant returned to the liquor house. Defendant met Peace at Bill's Truck Stop at about 5:00 a.m. before returning home. Sometime after arriving home, defendant received a phone call alerting him that Johnson was dead.
*319 Defendant fled to New York after receiving threatening messages and learning he was accused of Johnson's murder.
B. Pretrial Proceedings
The State filed a motion in limine to preclude the defense from questioning Malachi about her pending drug trafficking charges in Guilford County. Defendant objected to the State's request, arguing that there was an e-mail exchange between the Guilford County prosecutor handling Malachi's drug charges and the Forsyth County prosecutor involved in defendant's murder trial. Based on the e-mail exchange concerning a possible plea deal, the trial court ruled that defendant could question Malachi about the pending drug charges, as well as what she knew about any potential deals or favorable treatment as a result of her testimony at trial.
C. Trial
During cross-examination, defense counsel questioned Malachi regarding several drug charges pending against her including: one count of trafficking in methamphetamine, one count of conspiracy to traffic in methamphetamine, one count of trafficking in marijuana, and one count of conspiracy to traffic in marijuana. Malachi admitted that these charges were pending against her in Guilford County and admitted that she was aware that each of the charges involving methamphetamine carried a sentence of 90 months to 120 months in prison. Similarly, Malachi acknowledged that each of the charges involving marijuana carried a **443 mandatory sentence of 25 to 30 months in prison. Defense counsel then questioned Malachi about a possible plea deal.
Q. What, if anything, have you been offered from the State at this point regarding those pending charges?
A. I don't know nothing about that.
Q. So nothing has been finalized in Guilford County?
[PROSECUTOR]: Objection.
THE COURT: Sustained.
[ ]
Q. You're not aware of any current plea offer at this point. Correct?
A. Yes, sir.
Q. Have you - - are you aware that there are such things as plea offers?
[PROSECUTOR]: Objection.
THE COURT: I'll allow that one question.
[ ]
Q. Ma'am?
A. Yes, sir.
Q. What, if anything, do you hope to gain out of testifying here for the State with regard to those five pending charges?
A. Justice for Anthony Johnson.
Q. So you don't think you're going to get anything out of it for the charges you got?
[PROSECUTOR]: Objection.
THE COURT: Sustained.
[ ]
Q. Are you aware of any other considerations you might have for those pending charges right now?
**444 [PROSECUTOR]: Objection.
THE COURT: Sustained.
The jury found defendant guilty of first-degree murder, attempted robbery with a dangerous weapon, and possession of a firearm by a felon. The trial court arrested judgment on the conviction for attempted armed robbery and consolidated the other two convictions. Defendant was sentenced to life in prison without parole.
Analysis
In general, we review a trial court's limitation on cross-examination for abuse of discretion. See State v. McNeil , 350 N.C. 657, 678, 518 S.E.2d 486, 499 (1999). If the trial court errs in excluding witness testimony showing possible bias, thus violating the Confrontation Clause, the error is reviewed to determine whether it was harmless beyond a reasonable doubt. Id. at 678, 518 S.E.2d at 499. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' " Davis v. Alaska , 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). An accused confronts the witnesses against him through *320 cross-examination, which tests "the believability of a witness and the truth of his testimony." Id. at 316, 94 S.Ct. 1105. By way of the Confrontation Clause, the accused is guaranteed effective cross-examination, but "[t]rial judges retain broad discretion to preclude cross-examination that is repetitive or that is intended to merely harass, annoy or humiliate a witness." State v. Mason , 315 N.C. 724, 730, 340 S.E.2d 430, 434 (1986) (citations omitted). Here, we must first determine whether the trial court violated defendant's Sixth Amendment right by limiting his cross-examination of Malachi and if so, whether that error was harmless beyond a reasonable doubt.
Generally, a defendant may not cross-examine a witness regarding pending charges. See State v. Abraham , 338 N.C. 315, 353, 451 S.E.2d 131, 151 (1994) (error to allow cross-examination of prior bad acts, plea deal, and pending warrant). See also State v. Jones , 329 N.C. 254, 259, 404 S.E.2d 835, 837 (1991) (cross-examination of a pending charge could not be used to impeach a witness). An exception to this rule is compelled by the Sixth Amendment Confrontation Clause when defendant seeks to show bias or undue influence by the state because of the pending charges. See Davis , 415 U.S. at 315, 94 S.Ct. 1105. Such potential bias or influence is present when a witness faces pending charges in the same jurisdiction he testifies in, allowing a defendant to cross-examine the witness concerning the charges. See State v. Murrell , 362 N.C. 375, 404, 665 S.E.2d 61, 80 (2008). However, where a witness faces pending charges in a separate **445 jurisdiction than the one he testifies in, a defendant must "provide[ ] [ ] supporting documentation of a[ ] discussion between the two district attorneys' offices to demonstrate that [the witness]'s testimony [i]s biased." Murrell at 404, 665 S.E.2d at 80.
This issue was addressed by this Court in State v. Prevatte , 346 N.C. 162, 484 S.E.2d 377 (1997). In Prevatte , the defendant was on trial for first-degree murder where the state's principal witness was an eyewitness to the murder. 346 N.C. at 162, 484 S.E.2d at 378. The eyewitness had been indicted on nine charges of forgery and uttering forged checks in another county at the time he testified. Id. at 163, 484 S.E.2d at 378. Even though it was a different county, the same district attorney was in charge of both cases. Id. at 163, 484 S.E.2d at 378. During trial, the court prohibited the defendant from questioning the witness regarding the pending criminal charges and whether he had been promised anything in exchange for his testimony. Id. at 163-64, 484 S.E.2d at 378. Instead, the court held a voir dire hearing outside the presence of the jury in which the defendant was allowed to cross-examine the witness about the charges. Id. at 164, 484 S.E.2d at 378. Because the questioning took place outside their presence, jurors were prevented from hearing the testimony that could have shown the witness's bias. Id. at 164, 484 S.E.2d at 378. This Court stated, "[t]he fact that the trial of [the witness] on the forgery and uttering charges had been continued for eighteen months might have led the jury to believe the State was holding those charges in abeyance pending the witness' testimony in this case." Id. at 164, 484 S.E.2d at 378. As a result, this Court issued the defendant a new trial, holding that the trial court committed constitutional error in limiting the cross-examination of the witness and "that the error was not harmless." Id. at 164, 484 S.E.2d at 378-79. The State argued that during the voir dire hearing, the defendant testified that there was no agreement for his pending charges in exchange for his testimony. Id. at 164, 484 S.E.2d at 378. In response, the Court reasoned that even if the witness's "testimony show[ed] that [the witness] expected nothing from the State for his testimony against the defendant[,] [t]he effect of the handling of the pending forgery and uttering charges on the witness was for the jury to determine" and "[n]ot letting the jury do so was error." Id. at 164, 484 S.E.2d at 378-79. The Court based its reasoning on Davis v. Alaska in holding that the error was not harmless beyond a reasonable doubt. Id. at 163-64, 484 S.E.2d at 378.
Davis involved a witness who was on probation for burglarizing two residences when he testified as an eyewitness against the defendant. 415 U.S. at 310-11, 94 S.Ct. 1105. Since the witness was a juvenile at the time, the State **446 made a motion for a protective *321 order regarding the witness's juvenile record, which the trial court granted. Id. at 311, 94 S.Ct. 1105. The protective order barred the defendant from inquiring about the witness's probationary status or criminal record. Id. at 312, 94 S.Ct. 1105. As a result, it was impossible for the defendant to show the witness's possible bias during cross-examination. Id. at 312, 94 S.Ct. 1105. On appeal, the Supreme Court determined:
Since defense counsel was prohibited from making inquiry as to the witness' being on probation under a juvenile court adjudication, [the witness]'s protestations of unconcern over possible police suspicion that he might have had a part in the [crime] and his categorical denial of ever having been the subject of any similar law enforcement interrogation went unchallenged.
Id. at 313-14, 94 S.Ct. 1105. The Court emphasized that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness]'s testimony which provided 'a crucial link in the proof ... of [the defendant's] act.' " Id. at 317, 94 S.Ct. 1105 (second alteration in original) (quoting Douglas v. Alabama , 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) ). Because the jury was prohibited from learning about the witness's probationary status and whether the witness's criminal record motivated his testimony, the defendant was "denied the right of effective cross-examination ... 'and no amount of showing of want of prejudice would cure it.' " Id. at 318, 94 S.Ct. 1105 (citation omitted) (quoting Smith v. Illinois , 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) ).
Here, the trial judge allowed defendant to cross-examine Malachi in the presence of the jury concerning the pending charges against her. Although the court did not completely deny defendant the right to cross-examine Malachi, it did place "a significant limitation on [ ] defendant's cross-examination of the State's principal witness." State v. Hoffman , 349 N.C. 167, 180, 505 S.E.2d 80, 88 (1998) (emphasis added). Thus, defendant was "denied the right of effective cross-examination." Davis , 415 U.S. at 318, 94 S.Ct. 1105 (emphasis added). Malachi, like the witnesses in Prevatte and Davis , was the State's principal witness and was present when Johnson was murdered. At the time of the trial, Malachi was facing criminal charges that, if convicted, could result in her imprisonment for more than nineteen years.
In a voir dire hearing that was held outside the presence of the jury, defendant's evidence demonstrated that the prosecutor responsible for Malachi's drug charges was in communication with the prosecutor responsible for defendant's murder trial. The two prosecutors had exchanged e-mails concerning a possible plea deal for Malachi based **447 on her testimony at defendant's trial. Recognizing that Malachi was the only witness to the crime and that she was facing more than a decade in prison because of her pending drug charges, the State "had a strong[ ] weapon to control [Malachi]." Prevatte , 346 N.C. at 164, 484 S.E.2d at 378.
During trial, the court limited defendant's cross-examination of Malachi several times. When defendant asked Malachi whether a deal had been finalized in Guilford County concerning her pending charges, the prosecutor objected and the court sustained the objection. Likewise, when defendant asked Malachi whether she thought she was "going to get anything out of it" for the charges pending against her based on her testimony, the court again sustained the prosecutor's objection. Finally, defendant asked Malachi whether she was aware of any current considerations she might have for her pending charges. Before Malachi could answer, the prosecutor again objected and the court sustained the motion. Here, the concern with the court's limitations on cross-examination lies not with whether Malachi received a plea deal, but with the jury's inability to consider her testimony. By limiting Malachi's testimony, the court prohibited the jury from considering evidence that could have shown bias on Malachi's part. To reiterate, "[t]he effect of the handling of the pending ... charges on [Malachi] was for the jury to determine" and "[n]ot letting the jury do so was error." Prevatte at 164, 484 S.E.2d at 378-79. Accordingly, the trial court abused its discretion in limiting defendant's cross-examination *322 of Malachi, thereby violating the Confrontation Clause.
This Court in State v. Hoffman held that although the trial court erred in prohibiting the defendant's cross-examination of a witness about charges pending against him, the error was harmless. 349 N.C. at 181, 505 S.E.2d at 89. Unlike here, the witness in Hoffman was not a principal witness but only a corroborating witness. Id. at 180, 505 S.E.2d at 88. As such, the State's case did not rest solely on the witness's testimony. Id. at 180, 505 S.E.2d at 88 ("[The witness's] minimal importance [wa]s evidenced by the fact that the prosecutor scarcely mentioned him in his closing argument."). In addition to the witness's lack of significance to the State's case, the defendant was able to "thoroughly impeach[ ]" the witness regarding prior inconsistent statements and a lengthy history of past convictions. Id. at 180-81, 505 S.E.2d at 88-89. Finally, there was substantial evidence showing the defendant's guilt aside from the witness's testimony. Id. at 181, 505 S.E.2d at 89. The defendant was charged with robbery with a dangerous weapon and first-degree murder. Id. at 173, 505 S.E.2d at 84. The State presented evidence at the defendant's trial showing that the defendant was seen outside of the victim's store before the robbery and murder occurred. Id. at 181, 505 S.E.2d at 89.
**448 Another witness testified that the defendant had asked him to rob the store with the defendant. Id. at 181, 505 S.E.2d at 89. Other witnesses testified that the defendant admitted to murdering the victim. Id. at 181, 505 S.E.2d at 89. Finally, physical evidence found at the scene of the crime was consistent with a witness's testimony regarding what the defendant had told the witness about the crime. Id. at 181, 505 S.E.2d at 89. Because there was substantial evidence against the defendant along with the impeachment evidence against the State's corroborating witness, the trial court's error "was harmless beyond a reasonable doubt." Id. at 181, 505 S.E.2d at 89.
In this case, the State argues that any error committed by the trial court was harmless beyond a reasonable doubt based on the thoroughness of defendant's cross-examination of Malachi and her impeachment over prior inconsistent statements. See McNeil , 350 N.C. at 680, 518 S.E.2d at 500 (evidence of the thorough impeachment of a witness regarding inconsistent statements may result in harmless error). In McNeil this Court reasoned that "as in Hoffman , [the] defendant here thoroughly impeached [the witness] regarding her prior inconsistent statements and prior convictions." 350 N.C. at 680, 518 S.E.2d at 500. The Court found no error in McNeil and pointed out that the defendant had pleaded guilty to both counts of first-degree murder and only challenged errors in his sentencing phase. 350 N.C. at 680, 518 S.E.2d at 500. See also State v. Atkins , 349 N.C. 62, 505 S.E.2d 97 (1998) (finding no error where the defendant argued the trial court denied him the right to confront a witness testifying against him in his sentencing phase after pleading guilty to first-degree murder).
However, as in Prevatte , here Malachi was the key witness against defendant and was vital to the State's case due to the lack of other evidence against defendant. There was no physical evidence linking defendant to the crime and no other witnesses who placed him at the scene. While the State presented circumstantial evidence at trial, its case relied heavily on Malachi's testimony. Therefore, it was crucial for defendant to demonstrate Malachi's possible bias to the jury. The trial court erred by limiting the cross-examination of the State's principal witness when there was a lack of substantial evidence linking defendant to the crime and the error was not harmless beyond a reasonable doubt.
Conclusion
Because the trial court erred in limiting defendant's cross-examination of the State's principal witness and because that error was not harmless beyond a reasonable doubt, defendant is entitled to a new trial.
**449 Accordingly, we affirm the decision of the Court of Appeals vacating the verdict and judgment of the superior court. The cause is remanded to the Court of Appeals for further remand to the Superior Court in Forsyth County for a new trial.
AFFIRMED AND REMANDED.