IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1096

Filed 1 October 2025

Guilford County, Nos. 21CR028348-400, 21CR067344-400, 21CR067345-400

STATE OF NORTH CAROLINA

v.

MARCUS ALLEN MCCLINTON, Defendant.

Appeal by defendant from judgment entered 30 April 2024 by Judge Robert A. Broadie in Guilford County Superior Court. Heard in the Court of Appeals 10 September 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Steven Armstrong, for the State-appellee.*

*Sarah Holladay for defendant-appellant.*

GORE, Judge.

Defendant, Marcus Allen McClinton, appeals his convictions for first-degree murder, discharging a weapon into occupied property, and possession of a firearm by a felon. Defendant was sentenced to life imprisonment without the possibility of parole to run concurrently with 38 to 58 months' and 19 to 32 months' imprisonment. Defendant appeals of right pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444. Upon review of the record and the briefs, we discern no error and deny the Motion for Appropriate Relief.

**I.**

On 27 November 2020, a shooting took place at Cheetah's Club in Greensboro. Brandon Crawford sustained multiple gunshot wounds and later died from the injuries. Multiple shell casings were recovered at the parking lot, multiple bullets struck a parked vehicle and the Club building, and a casing was found inside of the building. Brittany Marshall was standing outside of the Club at the time of the incident and testified at trial. Additionally, the body camera footage of her interview with one law enforcement officer was admitted into evidence.

Marshall testified she saw a man outside of the Club arguing with someone on his phone. Soon after, an SUV style vehicle, either a Jeep or Volkswagen, pulled into the parking lot. Marshall testified a man climbed out and spoke with the man who had been on the phone. The man walked back to his car, turned around, and yelled, "I'm not a p*ssy" and started shooting at Crawford. Marshall described the shooter as a light-skinned black male who drove an SUV that was a Jeep or Volkswagen Tiguan. Marshall was not able to identify the shooter beyond his skin tone, and the type of vehicle he drove. Crawford was identified as the man on the phone who later died from the gunshot wounds.

While investigating between the time of the shooting and defendant's arrest, police gathered evidence tending to incriminate defendant. Text messages between defendant and Crawford along with cell phone tower location data placed defendant traveling to the Club before the shooting, in the vicinity of the Club around the time of the shooting, and away from the Club shortly after the shooting. Defendant and

Crawford exchanged five phone calls within the hour of the shooting. Defendant and

Crawford sent the following texts leading up to the shooting:

> CRAWFORD (12:08 AM): That's what's up bro
>
> MCCLINTON (12:27 AM): Dawg I'm with my family g…I got nieces and nephews I take care of u acting like I owe u or something
>
> MCCLINTON (12:27 AM): That is what's up
>
> CRAWFORD (12:31 AM): Hold bro u don't owe me sh*t sense it's like that make sure my bro get his sh*t
>
> CRAWFORD (12:33 AM): We good just make sure that bud good or I'll be at your door let's play like that I'm a beast
>
> MCCLINTON (12:34 AM): U can pull up anytime dawg
>
> MCCLINTON (12:36 AM): Matter of fact u can pull up tonight or I can don't matter n*gga f*ck u talking
>
> MCCLINTON (12:40 AM): Send me a addy
>
> MCCLINTON (12:42 AM): Send me a addy or pull up n*gga
>
> CRAWFORD (12:46 AM): We at cheaters
>
> MCCLINTON (12:46 AM): Pull up u talking that big boy sh*t like I owe u n*gga
>
> MCCLINTON (12:47 AM): Cash that check
>
> CRAWFORD (1:05 AM): U p*ssy keep hanging up

Video footage from a body shop across the street from the Club captured an SUV drive

into the Club's parking lot.

Police learned Inocencio Gonzalez was at the Club with Crawford the night of

the shooting, and upon interviewing Gonzalez, law enforcement officers learned

defendant had sent Gonzalez a screenshot of the text messages between defendant and Crawford, along with a text that stated, "Yo n*gga gonna get smoked playing with me dawg." Gonzalez testified defendant came to his house the day after the shooting to repay a $3,000 debt defendant owed, and "apologized that it happened (referring to Crawford's death), and sent his condolences." Gonzalez also testified defendant met with him a few days after the shooting and accused him of sharing the text messages with Crawford's family while tapping him on the forehead with a gun. Law enforcement officers discovered defendant had borrowed a Volkswagen Tiguan SUV from his friend, Mitchell Peele, during the weekend of the shooting.

Defendant presented evidence that a detective had interviewed the Club's bouncer, Michael Gary, the night of the shooting and learned he had overheard Crawford talking on his phone. According to the interview, Crawford was arguing with a man because Crawford had brought the man's wife to the Club. Gary heard defendant tell the man, "Ain't no p*ssy" and "we in the same religion." Crawford was wearing a Muslim head covering the night of the shooting. Defendant is neither Muslim nor married. The fact Crawford had brought another man's wife to the Club was corroborated by Gonzalez. Defense counsel argued this evidence created doubt and further challenged the cell phone evidence based upon Marshall's testimony of the driver getting out of the SUV paired with the time stamps of calls between defendant and Crawford. However, at trial, Gary did not comply with his subpoena, and the jury did not hear his direct testimony.

On 19 April 2021, defendant was indicted for first-degree murder, discharging a weapon into occupied property, and possession of a firearm by a felon. Defendant's trial did not occur until April 2024. During that time frame, defendant had four different attorneys for various reasons not associated with defendant. Also during that time frame, defendant's federal probation violation was activated, and he served an 18-month sentence. Defendant incurred additional charges of assault on a government official and two counts of resisting a public officer for an altercation while in transport to a hearing and was later indicted on these charges.

Further, the lead detective on the murder case was summoned for active military duty and did not return until October 2023. Defendant filed multiple *pro se* speedy trial motions, as did his attorney, Bryson. Bryson filed a motion to withdraw because defendant alleged Bryson was providing ineffective assistance of counsel, but the court denied this motion to withdraw. Defense counsel also filed a Motion to Dismiss for Speedy Trial. The case came for trial on 22 April 2024, and after hearing the motion to dismiss on lack of speedy trial grounds, the trial court denied the motion.

During trial, Marshall testified to her eyewitness account and the State admitted the body camera footage of her interview with Officer Bodemer but did not admit the additional video interview with Officer Stark. Defense counsel chose not to have the additional video admitted because he believed Marshall gave a more detailed description of the shooter that better matched defendant in that video.

During Gonzalez's testimony, defense counsel cross-examined Gonzalez about his prior convictions and his pending charges to impeach him. The trial court allowed cross-examination of the pending charges and prior convictions within the 10-year scope. The trial court did not allow defense counsel to question Gonzalez about the possibility of attaining habitual felon status if convicted of the pending charges.

The jury returned guilty verdicts for each charge. The trial court entered a judgment sentencing defendant to life imprisonment without the possibility of parole on the first-degree murder charge, to run concurrently with 38 to 58 months' for discharging a weapon into occupied property and 19 to 32 months' for possession of a firearm by a felon. Defendant timely appealed.

**II.**

Defendant appeals the following issues: (1) whether the trial court violated defendant's rights under the Confrontation Clause by limiting defendant's cross-examination of Gonzalez; (2) whether the trial court erred in denying defendant's motion to dismiss for lack of a speedy trial; (3) whether defendant's conviction of possession of a firearm by a felon was unconstitutional on its face and as applied to him; and, (4) whether defense counsel provided ineffective assistance of counsel by failing to present evidence that would contradict one of the State's key witnesses.

**A.**

Defendant argues the trial court violated his 6th Amendment right to adequately cross-examine Gonzalez. "Cross-examination guaranteed by the

Confrontation Clause is subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation." *State v. McNeil*, 350 N.C. 657, 677 (1999) (cleaned up). "The constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to harmless-error analysis." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (cleaned up).

> Whether such an error is harmless . . . depends upon a host of factors, . . . [such as] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*

Defendant argues the trial court violated his Confrontation rights by not allowing him to cross-examine Gonzalez about a potential habitual felon status should he be convicted of the pending felony charges. Although generally, "a defendant may not cross-examine a witness" about pending charges, this rule is excepted when a "defendant seeks to show bias or undue influence by the State because of the pending charges." *State v. Bowman*, 372 N.C. 439, 444 (2019) (cleaned up). There is a "potential bias or influence . . . present when a witness faces pending charges in the same jurisdiction [in which] he testifies." *Id.*

Our Courts have decided in varying degrees how much a trial court may limit cross-examination. It is reversible error when the trial court denies any cross-examination of the witness's pending charges. *See State v. Prevatte*, 346 N.C. 162, 163–64 (1997). It is prejudicial error to allow the defendant to cross-examine the witness about pending charges, but to "significantly" limit the defendant's ability to cross-examine the witness about the expectation of any favorable outcome on those charges through their cooperation, when there is no other evidence or essential witnesses linking a defendant to the crime. *Bowman*, 372 N.C. at 446–48. In *State v. Hoffman*, it was error to limit cross-examination, but the error was harmless because the defendant "was not denied the right of effective cross-examination." 349 N.C. 167, 180 (1998). The Court explained the State presented other substantial evidence of the defendant's guilt apart from the witness, the witness was of "minimal importance," and despite not discussing the witness's pending charges he was "thoroughly impeached" in other ways. *Id.* at 180–81.

In the present case, defendant was allowed to cross-examine Gonzalez regarding his pending charges. The court allowed the following cross-examination:

> Q: Okay. And you do have the assault on a female conviction; is that right?
>
> A: Yes.
>
> Q: All right. You also have a possession with intent to sell and deliver marijuana conviction; is that right?

A: Yeah.

Q: Okay. Now, you also currently have pending cases, is that right?

A: Yes.

Q: All right. And you are currently charged with possession with intent to sell and deliver marijuana?

A: Yeah.

Q: Carrying a concealed gun?

A: Yes.

Q: Maintaining a dwelling for the purposes of storing controlled substances?

A: Yes.

Q: Actually, that's maintaining a vehicle, my apologies. Is that correct?

A: Yes.

Q: And two counts of possession of a firearm by a felon; is that right?

A: Yes.

Q: And one count of possession of a stolen firearm?

A: Yes.

Q: All right. And those are all pending cases for you right now in Guildford County; right?

A: Yes.

Q: All right. And, in fact, Mr. Jones is assigned as the prosecutor for your cases; isn't that right?

A: Yes.

Q: All right. And so he is in a position to help you on those cases--

MR. JONES: Objection, Your Honor, to the phrasing of that question.

THE COURT: Overruled.

Q: He is in a position to help you on your cases; isn't that right?

A: Yes.

Q: All right. Now you have no agreement with him here today; is that right?

A: Yes.

Q: All right. But you are hoping that if you help him, he will help you; is that right?

A: Yes.

The trial court denied defendant's attempt to cross-examine the witness about the possibility of attaining habitual felon status if convicted of the pending charges. The trial court did not err in this limitation. Defendant was able to elicit the witness's pending charges and his hope that by helping the State in this case, the same State attorney might give him a better outcome with his own pending charges. This limitation falls within the bounds of the Confrontation Clause's requirement that a defendant may effectively cross-examine the witnesses against him, while maintaining the trial court's discretion to "preclude repetitive" testimony. *McNeil*, 350 N.C. at 677.

Further, any perceived error was harmless. Defendant was able to impeach

Gonzalez on any bias or undue influence through the cross-examination that did take place. Gonzalez was a key witness in the State's case, but his testimony was not the only evidence admitted. The State admitted text messages and cell phone location data between defendant and Crawford that disclosed they were near one another and in an argument leading up to the shooting. Marshall's eyewitness account provided further evidence of the shooting along with the type of vehicle driven by the shooter. The ability to impeach Gonzalez further with a potential habitual felon status does not overcome the weight of the circumstantial evidence that incriminated defendant for the murder of Crawford. Accordingly, the trial court did not err by limiting the cross-examination, and any perceived error was harmless.

**B.**

Next, defendant argues the trial court erred by denying his motion to dismiss for lack of speedy trial. "The denial of a motion to dismiss on speedy trial grounds presents a constitutional question of law subject to de novo review." *State v. Farook*, 381 N.C. 170, 178 (2022). Defendants are afforded the "fundamental" right to a speedy trial within the Sixth Amendment of the United States Constitution applied to the States through the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515 (1972).

> To prove a speedy trial violation, a criminal defendant must first show that the length of the delay in his case is so presumptively prejudicial that it warrants a full constitutional review of his claim under *Barker*. The length of the delay is considered a triggering mechanism

that either instigates or obviates the need to conduct the full *Barker* analysis. If the rest of the inquiry is triggered, the length of delay functions independently as a factor to be weighed alongside the remaining three factors.

 The length of delay is not per se determinative of whether a defendant has been deprived of his right to a speedy trial. Although there is no specific duration that constitutes a delay of constitutional dimension, delays that exceed one year have been considered presumptively prejudicial, signaling the point at which courts deem the delay unreasonable enough to trigger the *Barker* calculus. When the accused makes this showing, the burden of proof to rebut and offer explanations for the delay shifts to the State.

*Farook*, 381 N.C. at 178–79.

In the present case, defendant was charged in 2021, and his trial did not occur until 2024, approximately three years later. This delay is beyond one year and triggers the *Barker* factors. The Supreme Court of the United States identified the following four factors a trial court must balance when the length of the delay triggers the prejudicial presumption: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.

The Supreme Court expounded on how to consider each factor. "[T]he length of the delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. . . . [T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 530–31. The second factor, the government's reason for the delay depends on whether it was deliberate, neutral, or valid. *Id.* at 531. "A deliberate

attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily[.]" *Id.* at 531. "A valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

The third factor, "defendant's assertion of his speedy trial right," requires the defendant to assert this right and the assertion or failure to do so is consideration for the extent to which the defendant faced deprivation of this right. *Id.* at 531, 528. The fourth factor, prejudice to the defendant, requires consideration of the following as the purpose behind the right to a speedy trial: "(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *State v. Webster*, 337 N.C. 674, 681 (1994) (cleaned up).

In the present case, the trial court found the length of delay was due to valid reasons, such as defendant's federal supervised release violation of which he served eighteen months of incarceration, that defendant had a total of four attorneys and each attorney needed time to "get up to speed" on the case, and the trial court found the government's delay was not "neglectful or willfully done." The State also communicated that one of the detectives was called for military duty during the time frame leading up to trial. Additionally, defendant was charged with first-degree murder and that is no "ordinary street crime." *Barker*, 407 U.S. at 531. These

findings are sufficient to support the trial court's determination that the government's delay, although long, was not willfully done nor neglectful.

As to the third and fourth factors, defendant readily asserted his right to a speedy trial through pro se means and through counsel. As to the fourth factor, defendant argued his incarceration for three years amounted to prejudice against him. Three years is a long time, but there are valid reasons for this length of time, and defendant does not suggest his ability to prepare a defense, or his evidence was affected by this delay. Accordingly, having considered each factor in turn and the arguments made by both parties, we determine the trial court did not err by denying defendant's motion to dismiss for lack of a speedy trial.

## C.

Next, defendant seeks Rule 2 review of an unpreserved constitutional argument. Defendant argues N.C.G.S. § 14-415.1(a) is facially unconstitutional pursuant to the Second and Fourteenth Amendments of the United States Constitution and Article I, Section 30 of the North Carolina Constitution. He also argues section 14-415.1(a) is unconstitutional as applied to his case.

When a defendant fails to raise a constitutional argument at the trial court level, it is unpreserved for appellate review pursuant to the North Carolina Rules of Appellate Procedure 10. *See* N.C.R. App. P. 10; *State v. Davis*, 364 N.C. 297, 301 (2010) (cleaned up) ("Constitutional issues not raised and passed on by the trial court will not ordinarily be considered on appeal."). Rule 2 allows us to set aside Rule 10,

and consider this argument "*in exceptional circumstances*, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and *only in such instances.*" *State v. Campbell*, 369 N.C. 599, 602 (2017). "[W]hether an appellant has demonstrated that his matter is the rare case meriting suspension of our appellate rules is always a discretionary determination to be made on a case-by-case basis." *Id.* at 603.

In the present case, defendant has failed to demonstrate his unpreserved constitutional argument is a manifest injustice or that it is significant to the public interest. Accordingly, in the exercise of our discretion, we decline invocation of Rule 2, and do not consider defendant's unpreserved issue.

**D.**

Lastly, defendant argues he received ineffective assistance of counsel. Defendant simultaneously submitted a motion for appropriate relief ("MAR") to this Court alongside his brief to support appellate review or remand to address his MAR should the record lack sufficient evidence to address it. Having reviewed the record, there is sufficient evidence for appellate review without remand for further proceedings. *See State v. Mills*, 205 N.C. App. 577, 586 (2010) ("[A] defendant's ineffective assistance of counsel claim brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without . . . appointment of investigators or an evidentiary hearing.").

Defendant argues defense counsel showed a second video of Marshall's interview to refresh her memory during cross examination, but he did not show this video to the jury. This particular video was Officer Stark's additional interview with Marshall in which she said Crawford said "If you think I'm p*ssy n*gger, then . . . If you gonna do something, then do it n*gger," rather than defendant making a statement about not being a p*ssy before shooting Crawford. According to defendant, had the jury viewed this video they would have heard inconsistencies in Marshall's testimony and defense counsel's failure to admit the video to the jury violated defendant's right to effective assistance as counsel. We disagree.

A defendant is guaranteed the right to effective assistance of counsel at trial pursuant to the Constitution of the United States and the North Carolina Constitution. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *State v. Braswell*, 312 N.C. 553, 562 (1985). Defendant must show that "his counsel's conduct fell below an objective standard of reasonableness." *Braswell*, 312 N.C. at 561–62. He must demonstrate "counsel's performance was deficient, . . . that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." *Id.* at 562 (citation omitted). Next, defendant most demonstrate this "deficient performance prejudiced the defense." *Id.* (citation omitted).

This same test is utilized to discern whether a defendant received ineffective assistance of counsel under Article I, sections 19 and 23 of the North Carolina

Constitution. *Id.* If a defendant demonstrates, through the "totality of the evidence" that but for defense counsel's error, "there would have been a different result in the proceedings," then we must reverse. *Id.* at 563. But, if we "determine at the outset that there is no reasonable possibility that in the absence of counsel's alleged errors the result of the proceeding would have been different," then it is unnecessary for us to consider any deficiency in counsel's performance. *Id.*

In the present case, despite defense counsel's decision to not show the jury the additional Marshall interview with Officer Stark, there is "no reasonable possibility . . . the result of the proceeding would have been different." *Id.* Independent of who made the statement, the evidence before the jury included texts between defendant and Crawford, eyewitness testimony the person who shot Crawford came from the SUV and was a light skinned black male, cell phone location services showing defendant's location near the Club at the time of the shooting, and defendant's interactions with Gonzalez as well as his text to Gonzalez, "Yo n\*gga gonna get smoked playing with me dawg." This evidence in totality is not overcome by inconsistencies of who made one statement prior to the shooting. Accordingly, defendant's argument is overruled.

## III.

For the foregoing reasons, defendant's constitutional rights were not violated, and the trial court did not err by denying his motion to dismiss for lack of speedy trial.

- 17 -

NO ERROR.

Judges TYSON and MURRY concur.