STATE OF NORTH CAROLINA v. RODRIGUEZ FERGUSON

No. COA99-1237

(Filed 5 December 2000)

**1. Witnesses— prosecutor as witness—evidence available elsewhere**

The trial court did not abuse its discretion by not permitting a first-degree murder and assault defendant to call the prosecutor as a witness where defendant was permitted to ascertain the information he sought through the availability of other witnesses.

**2. Discovery— tapes of interview—transcript provided**

The trial court did not err in a first-degree murder and assault prosecution by denying defendant's request to review tapes of an interview between a prosecutor and a State's witness pursuant to N.C.G.S. § 15A-903(f)(2) where defendant was provided with a transcript which was a "substantially verbatim" copy of the recording.

**3. Evidence— cross-examination of witness—prior unrelated charge**

The trial court did not err in a first-degree murder and assault prosecution by limiting defendant's examination of a State's witness regarding a prior unrelated conviction where there was no evidence of any pending criminal charges against the witness or that he was on probation, and nothing to indicate that the prosecutor's office was in any position to intimidate the witness or influence his testimony.

**4. Homicide— first-degree murder—instruction on manslaughter—defense of another—evidence insufficient**

A first-degree murder defendant was not entitled to a manslaughter instruction based upon defense of another, Ferguson, where the evidence, in the light most favorable to defendant, shows that defendant shot the victim in the head when the victim approached defendant and Ferguson while they were outside a club; the victim, who was wearing a long coat, made no threats to either defendant or Ferguson and made no movement suggesting that he was going to harm defendant or Ferguson; and, although the confrontation took place in an environment where others were shooting guns in celebration of the New Year, there is no

basis for the conclusion that the victim was about to kill or cause great bodily harm to anyone.

Appeal by defendant from judgments dated 6 December 1997 by Judge D. Jack Hooks, Jr. in Bladen County Superior Court. Heard in the Court of Appeals 19 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

GREENE, Judge.

Rodriguez Ferguson (Defendant) appeals from judgments entered after a jury rendered verdicts finding him guilty of five counts of first-degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury.

On the night of 31 December 1994, Defendant, who had been drinking all day, went to the Puppy Creek Family Fun Center (Puppy Creek) to rob Steve Locklear. After Defendant arrived at Puppy Creek, he shot five people: killing four and paralyzing a fifth victim. A few hours later in the early morning hours of 1 January 1995, Defendant and his brother Kendrick Ferguson (Ferguson) went to the Zodiac Club (the Zodiac) along with some other relatives. After Ferguson and Defendant arrived at the Zodiac, Ferguson got into an argument outside the Zodiac with Aaron Goode (Goode). After this argument terminated, Defendant and Ferguson were approached by James Morrison (Morrison), who was wearing a long trench coat and had his hand behind his back. Defendant and Morrison had a brief conversation about the whereabouts of Goode. After this conversation, Defendant fatally shot Morrison in the head.

On 2 January 1995, Defendant was taken into custody and charged with five counts of first-degree murder and one count of assault with a deadly weapon with the intent to kill inflicting serious injury. Defendant subsequently waived his Miranda rights and told Detective Bob Conerly (Conerly), of the Hoke County Sheriff's Department, he had "shot them all." When questioned about Morrison's death, Defendant stated:

I saw [Morrison coming] toward[] us and I heard a female voice say, 'he's got a gun.' . . . I was standing by a tree . . . and talking and arguing and that is when I saw this guy running toward[] them and I . . . heard this girl say . . . that he had a gun and I just walked up to him and I shot him . . . .

Conerly asked Defendant "what made you kill these people, was it something they said, something they did, or how they looked at you, what?" Defendant responded, "[a]ll I can say is that I was drunk."

On 18 July 1997, Ferguson agreed to a series of interviews with the State and to testify for the State at Defendant's trial. On 18 July 1997 and 24 September 1997, Kristy Newton (Newton), the prosecutor, conducted two three-hour interviews with Ferguson about the Zodiac and Puppy Creek shootings. At times during these interviews, Newton's tone of voice was "angry" and Newton used profane language in questioning Ferguson. Ferguson stated his statements changed based on what Newton wanted to hear and "on the advice and the instruction of [his] lawyer."

On 6 October 1997, jury selection began and on that day a search warrant was served on Defendant, without the presence of his counsel. The warrant was issued to search Defendant's body and clothing for any indication of gang involvement. On 8 October 1997, Defendant filed a motion for sanctions against the attorneys for the State in connection with the 6 October search warrant. At the sanctions hearing, Defendant made a motion to call Newton as a witness in light of her alleged extensive involvement in the preparation of the search warrant affidavit. The trial court denied Defendant's request to call Newton as a witness, but did order Newton to step aside and allow the examination of witnesses connected with the search warrant to be conducted by someone other than Newton. Defendant was permitted to question Detective Sergeant W.J. Blackburn concerning Newton's involvement in the preparation of the search warrant affidavit.

At trial, Ferguson testified for the State concerning the Zodiac and Puppy Creek shootings. Defendant made a motion to review the tape recordings of the interviews conducted between Newton and Ferguson to hear "[Newton's] statements, promises, assurance, [and] coercion" and "[her] tone of voice." Prior to Ferguson's testimony, Defendant had been given a transcript of the Newton-Ferguson interview which, according to the prosecution, "was a substantially ver-

batim recital of the electronic recording of the interviews," personally prepared by Newton. After conducting an *in camera* review of the tapes, the trial court denied Defendant's motion to review the tapes, determining the transcript was "frightening[ly] close to verbatim, there is nothing about the tone on there that is significantly different than the tone used . . . in open court."

Telly Stephens (Stephens), an eyewitness to the shooting of Morrison, testified concerning the events surrounding the shooting of Morrison by Defendant. During Defendant's cross-examination of Stephens, Defendant attempted to inquire into criminal charges filed by the Hoke County District Attorney's Office against Stephens for events occurring in 1996 and unrelated to the events surrounding the killings at the Zodiac and Puppy Creek. The State objected to this line of questioning and, in response, the trial court conducted a *voir dire* hearing.

The *voir dire* revealed that in the summer of 1996, in a matter unrelated to the Zodiac and Puppy Creek killings, Stephens was charged with assault with a deadly weapon with intent to kill inflicting serious injury and felony robbery with a dangerous weapon. The police officer Stephens "talk[ed] to with respect to [the summer 1996] charges" was the same officer he spoke with concerning Morrison's death and the same prosecutor's office in Defendant's case also prosecuted Stephens's 1996 charges. The felony robbery charge against Stephens was dismissed by the district court after conducting a probable cause hearing. With respect to the other charge, Stephens was permitted to plead guilty to misdemeanor assault and was sentenced to "time served." Subsequent to the *voir dire*, the trial court sustained the State's objection, but did express the court's willingness to allow Defendant to "make inquiry as to past convictions[,] . . . to make some brief inquiry regarding the circumstances of those convictions[,] . . . [and Defendant] may ask . . . if that was a concession. [Defendant] may argue it to the jury, if [he] believe[s] it was [a concession]."

In the presence of the jury, the trial court permitted Stephens to testify that in December 1996, he entered into a plea agreement with the district attorney's office whereby he was permitted to plead guilty to a misdemeanor assault in exchange for the dismissal of the felony charge of assault with intent to kill.

Freddie McLaughlin (McLaughlin) testified concerning the events that occurred at the Zodiac and the circumstances surrounding

Morrison's death. On cross-examination, Defendant attempted to impeach McLaughlin with an alleged prior inconsistent statement McLaughlin made to Newton. McLaughlin, however, denied making such statement and Defendant made a motion to call Newton to have her testify about McLaughlin's prior statement. Newton informed the court that in addition to herself, McLaughlin's mother, Mae, was present during the interview. The trial court denied Defendant's request to call Newton as a witness and Defendant never attempted to question McLaughlin's mother concerning the interviews.

Shon Singletary (Singletary) testified the Zodiac was a violent establishment and he and Defendant had witnessed a murder there sometime in 1991. In the early morning hours of 1 January 1995, Defendant, Singletary, Ferguson, and others, who were all intoxicated, ·went to the Zodiac. Shortly after the group arrived at the Zodiac, Ferguson and Goode argued. Goode "had his hand in his back . . . like he was ready to pull out a gun. . . . [H]e [was] known for carrying guns." At the time, shots were being fired in apparent celebration of the New Year, and people were running. When Morrison, with his hand behind his back, "ran up behind" Defendant, it was dark and Morrison was wearing a long trench coat. Singletary did not see Morrison approach, but when he saw Morrison it appeared "he was going to shoot somebody."

On cross-examination, Newton asked Singletary if he had "refused to speak with law enforcement, [or] the [d]istrict [a]ttorney's [o]ffice." Defendant objected to Newton asking Singletary this question and the court sustained Defendant's objection. Defendant made a motion, out of the presence of the jury, to call Newton as a witness to confront allegations of Singletary's unwillingness to speak with law enforcement. The trial court, however, denied Defendant's request. On redirect, Defendant was allowed to question Singletary concerning his refusal to speak with Newton about the events that took place on 1 January 1995.

At the close of the evidence, the trial court instructed the jury on first-degree murder with respect to all five killings. The jury was also instructed on second-degree murder with respect to the killing of Morrison. The trial court denied Defendant's request for an instruction on manslaughter with regard to the Morrison killing. This request was based on Defendant's claim the "killing [was] done in defense of family or third person."

The issues are whether: (I) the participation of the prosecuting attorney in the investigation of this case made her a necessary witness; (II) Defendant was entitled, under N.C. Gen. Stat. § 15A-903(f)(2), to review the tape recorded interviews of Ferguson although he had previously been provided with a written transcript of the tapes; (III) Defendant should be permitted to cross-examine a witness concerning a prior plea bargain; and (IV) evidence was present in this case from which the jury could have concluded Defendant shot Morrison in lawful defense of Ferguson.

## I

[1] Defendant argues he should have been allowed to call Newton, the prosecutor, to testify concerning her alleged extensive involvement in the preparation of a search warrant affidavit, McLaughlin's alleged prior inconsistent statement, and Singletary's refusal to speak with Newton.

While there is a "reluctance to allow attorneys to appear in a case as both advocate and witness," a prosecutor is competent to testify on behalf of a defendant. *State v. Simpson*, 314 N.C. 359, 373, 334 S.E.2d 53, 62 (1985). There must exist, however, compelling reasons to allow a defendant to call a prosecuting attorney as a witness and whether these compelling circumstances exist is within the trial court's discretion. *Id.* There are no compelling reasons if other witnesses are available who can provide the information sought. *State v. Daniels*, 337 N.C. 243, 265, 466 S.E.2d 298, 312 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995).

On all three occasions disputed by Defendant, after the trial court denied Defendant's request to call Newton as a witness, Defendant was permitted to ascertain the information he sought through the availability of other witnesses. Accordingly, there were no compelling reasons to permit Defendant to call Newton as a witness and the trial court did not abuse its discretion.

## II

[2] Defendant next argues the tape recorded interview of Ferguson should have been provided to Defendant so Defendant could ascertain whether the prosecution unduly influenced Ferguson's testimony. We disagree.

After a witness has testified for the State on direct examination, a defendant is entitled to "any statement of the witness in the possession of the State that relates to the subject matter as to which the

witness has testified." N.C.G.S. § 15A-903(f)(2) (1999). A "statement," within the meaning of section 15A-903(f)(2), includes *either* "[a] stenographic, mechanical, electrical, or other recording, or a transcription thereof, that is a substantially verbatim recital." N.C.G.S. § 15A-903(f)(5)(b) (1999).

In this case, Defendant was provided with a transcript of the tape recorded interviews of Ferguson and that transcript was a "substantially verbatim" copy of the recording. Thus, the trial court did not err in denying Defendant's request to review the tapes.

### III

**[3]** Defendant argues he should have been permitted to impeach Stephens by cross-examining him about his plea bargain with the Hoke County District Attorney's Office on a 1996 felony assault charge, which is unrelated to the current charges against Defendant.

The constitutional right to cross-examine a witness includes the right to examine that witness about any pending criminal charges or any criminal convictions for which he is currently on probation. *State v. Prevatte*, 346 N.C. 162, 163-64, 484 S.E.2d 377, 378 (1997). This is so because the jury is entitled to consider, in evaluating a witness's credibility, the fact the State has a "weapon to control the witness." *Id.* at 164, 484 S.E.2d at 378; *see State v. Jordan*, 120 N.C. App. 364, 370, 462 S.E.2d 234, 238 (the possibility criminal charges can be reinstated against a witness is within proper scope of cross-examination), *disc. review denied*, 342 N.C. 416, 465 S.E.2d 546 (1995).

In this case, there is no evidence there were any pending criminal charges against Stephens or that he was on probation. Furthermore, there is nothing in this record or in Defendant's brief to suggest the Hoke County District Attorney's Office was in any position to intimidate Stephens or influence his testimony. Therefore, Defendant had no constitutional right to inform the jury that Stephens' plea to the misdemeanor charge was the result of a plea agreement with the district attorney's office. Accordingly, the trial court did not err in restricting Defendant's examination of Stephens with regard to the 1996 conviction.

### IV

**[4]** Defendant finally argues the trial court erred in failing to instruct on manslaughter because there is sufficient evidence he shot Morrison in defense of Ferguson. We disagree.

In general, a trial court is required "to comprehensively instruct the jury on a defense to the charged crime when the evidence viewed in the light most favorable to the defendant reveals substantial evidence of each element of the defense." *State v. Hayes*, 130 N.C. App. 154, 178, 502 S.E.2d 853, 869-70 (1998), *aff'd in part, dismissed in part*, 350 N.C. 79, 511 S.E.2d 302 (1999). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991) (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1990)).

To support a charge of manslaughter based on the defense of others, there must be substantial evidence: (1) it appeared to defendant and he believed it necessary to kill the deceased to save another from death or great bodily harm; and (2) defendant's belief was reasonable. *State v. Perry*, 338 N.C. 457, 466-67, 450 S.E.2d 471, 476 (1994).

In this case, the evidence, considered in the light most favorable to Defendant, *State v. Blackmon*, 38 N.C. App. 620, 621-22, 248 S.E.2d 456, 457 (1978), *disc. review denied*, 296 N.C. 412, 251 S.E.2d 471 (1979), shows Defendant shot Morrison in the head when Morrison approached Defendant and Ferguson when they were outside the Zodiac. Morrison, who was wearing a long coat, made no threats to either Defendant or Ferguson, and he made no movement suggesting he was going to harm Defendant or Ferguson. Although this confrontation took place in an environment where others were shooting guns, in apparent celebration of the New Year, there is no basis for supporting a conclusion Morrison was about to kill or cause great bodily harm to anyone. Accordingly, Defendant was not entitled to the manslaughter instruction.[1]

No error.

Judges MARTIN and EDMUNDS concur.

---

1. Because Defendant does not argue self-defense in his brief, we do not address his assignment of error to the trial court's failure to instruct the jury on self-defense. *See* N.C.R. App. P. 28(a) (questions raised by assignments of error but not "discussed in a party's brief, are deemed abandoned").