An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-793

Filed 20 May 2026

Cleveland County, Nos. 22CR001173-220, 22CR050761-220, 22CR050762-220, 22CR050797-220

STATE OF NORTH CAROLINA

v.

BRYAN KEITH HEAVNER, Defendant.

Appeal by defendant from judgment entered 29 September 2025 by Judge W. Todd Pomeroy in Superior Court, Cleveland County. Heard in the Court of Appeals 13 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Adrian W. Dellinger, for the State.*
>
> *The Carolina Law Group, by Kirby H. Smith, III, for defendant-appellant.*

STROUD, Judge.

A jury convicted Defendant Bryan Heavner of trafficking methamphetamine, heroin, and fentanyl, each by possession and by transportation, and of possession of cocaine. He raises two challenges on appeal. First, he argues that the trial court violated his constitutional right to confront the witnesses against him by limiting his

cross-examination of a State witness. *See* U.S. Const. amend. VI; N.C. Const. art. I, § 23. Second, he claims that the trial court erred in declining to give North Carolina Pattern Jury Instruction 104.21 on the testimony of a witness with quasi-immunity. We hold that Defendant received a fair trial, free of prejudicial error.

## I.    Background

The evidence at trial tended to show that in February 2022, the Gaston County Police Department (GCPD) used a confidential informant "to conduct a controlled purchase of methamphetamine" from Katie Montgomery. GCPD officers, including Detective Val Omandi, then executed a search warrant on Montgomery's hotel room. Inside, they found "about 46 grams" of methamphetamine—plus an ounce and a half or so on Montgomery.

Omandi testified that, rather than face prosecution, Montgomery (then on probation) "decided to cooperate." The GCPD "signed her up as a confidential informant," and she began assisting Omandi with the investigation of Defendant. She identified Defendant as her supplier. Soon after, Montgomery told Omandi that Defendant sourced his drugs from a South Carolina supplier and returned through Cleveland County. Omandi contacted the Cleveland County Sheriff's Department (CCSD) to arrange a traffic stop during Defendant's return. The CCSD agreed.

The next day, Montgomery accompanied Defendant to Spartanburg, South Carolina, where he picked up a shipment. The pair stopped briefly at a Red Roof Inn. Omandi surveilled them. At around 1:30 a.m., Montgomery texted Omandi a coded

message signaling Defendant had the drugs and was heading back. Omandi watched them leave the Red Roof Inn and trailed them toward North Carolina. As they approached the state line, he notified CCSD to stop Defendant's vehicle.

Deputy Mike Lawrence testified that CCSD deputies initiated a traffic stop as Defendant crossed into Cleveland County. Defendant did not pull over, and a pursuit ensued. Deputies saw packages being thrown from the passenger-side window, though they could not identify who threw them. Eventually, a deputy deployed spike strips and stopped the vehicle.

Deputies searched Defendant and recovered a red tin can containing two small bags—one holding a white powder, the other a brown, tar-like substance. From the shoulder of the road, deputies recovered a bag of methamphetamine, drug paraphernalia, and a revolver. At trial, a forensic chemist with the North Carolina State Crime Lab identified the seized substances as methamphetamine, cocaine, heroin, and fentanyl. Deputies arrested Defendant and released Montgomery without charges.

Omandi testified that the Gaston County District Attorney's office did not prosecute Montgomery for the methamphetamine seized during the February 2022 controlled buy. Montgomery continued working as a GCPD confidential informant through August 2023, "provid[ing] . . . substantial assistance to gain favor for . . . [Gaston County's] pending investigation of her." She completed fourteen additional controlled buys for the GCPD on undisclosed terms.

A Cleveland County grand jury returned indictments on 14 March 2022, charging Defendant with trafficking methamphetamine (more than 400 grams) by possession and by transportation; trafficking heroin (more than four grams but less than fourteen grams) by possession and by transportation; possession of cocaine; and possession of a firearm by a felon. On 10 October 2022, the grand jury returned indictments charging Defendant with trafficking fentanyl (more than twenty-eight grams) by possession and by transportation.

Defendant filed a motion requesting voluntary discovery under North Carolina General Statute Section 15A-902 and *Brady v. Maryland*, 373 U.S. 83 (1963), on 10 November 2022. *See* N.C. Gen. Stat. § 15A-902(a) (2023) ("A party seeking discovery under this Article must, before filing any motion before a judge, request in writing that the other party comply voluntarily with the discovery request."); *Brady*, 373 U.S. at 87 (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"). He sought, among other things, the identities of any informants, the criminal records of the State's witnesses, and any promises of leniency made to people who would testify. The State produced discovery in response.

Defendant later filed a "motion to reveal deals or concessions," requesting any deals, concessions, or inducements offered to potential State witnesses—even by agencies other than "the Cleveland County District Attorney's office or its direct agents." He alleged that the investigation had "crossed many jurisdictions" and that

the GCPD and CCSD "were working jointly."

The case was tried in Superior Court, Cleveland County, in September 2023. Before jury selection, the trial court heard the parties' pretrial motions. Defendant moved to continue the trial so he could investigate Montgomery's compensation as a GCPD informant and her new drug charges. In particular, he sought the amounts the GCPD had paid Montgomery for the fourteen additional controlled buys she completed after his arrest. The State objected that those amounts involved "[fourteen] separate situations that happened in Gaston County with Gaston County charges" and thus fell "outside the scope of" Defendant's trial.

Defense counsel pressed the relevance: how much Montgomery was paid per transaction, how she worked for the GCPD, and how those fourteen buys compared with her work on Defendant's case—all, she argued, went to impeachment. The trial court disagreed, finding the specific amounts' relevance "tenuous" and limited "to the Gaston County cases." It nevertheless promised defense counsel "wide latitude" on cross-examination:

> You know, she's a paid confidential informant. She's working multiple counties. She received compensation. That she's also received the benefit of testifying, getting charges reduced, modified, whatever it may be. I'll certainly give you all that latitude to ask those questions, but I don't know that the amounts are . . . relevant for these hearings.

Finally, defense counsel moved the court "to reveal the deal or any concessions" the State had made with Montgomery. She argued that much of the State's evidence

would "hinge on [Montgomery's] testimony," for Montgomery was "heavily involved in this case." The State responded that it had already met with defense counsel and Omandi and laid "out exactly . . . what [Montgomery] got for her work in this matter." The court denied the motion.

Defendant pleaded "not guilty to all counts." After the State rested its case, he moved to dismiss for insufficient evidence. The trial court denied the motion. Defendant presented no evidence.

On 29 September 2023, the jury found Defendant guilty of trafficking methamphetamine, heroin, and fentanyl, each by possession and transportation, and of possession of cocaine. It acquitted him on the firearm charge.

Defendant gave oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under North Carolina General Statute Sections 7A-27(b)(1) and 15A-1444(a). *See* N.C. Gen. Stat. § 7A-27(b)(1) (2023) ("[A]ppeal lies of right directly to the Court of Appeals . . . [f]rom any final judgment of a superior court . . . ."); *see also* N.C. Gen. Stat. § 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III. Discussion

Defendant raises two challenges on appeal. We address each in turn.

### A. Confrontation Clause

Defendant argues that the trial court's limits on cross-examining Montgomery violated his Sixth Amendment right to confront the witnesses against him.[1] We disagree.

### 1. *Standard of Review*

The parties disagree about the proper standard of review. Defendant argues for *de novo* review, reasoning that whether he "was denied the right to confront his accuser is an issue of constitutional law."[2] *See State v. Barthel*, ___ N.C. App. ___, ___, 924 S.E.2d 74, 82 (2025) ("We . . . review constitutional questions *de novo*." (citation omitted)). The State argues for abuse-of-discretion review, treating the trial court's rulings as evidentiary ones under Rules 401 and 403 of the North Carolina Rules of Evidence. *See State v. Petrick*, 186 N.C. App. 597, 601, 652 S.E.2d 688, 691 (2007) ("[W]e review evidentiary rulings for an abuse of discretion[.]" (citation omitted)).

Our Supreme Court resolved this dispute in *State v. Bowman*, 372 N.C. 439, 831 S.E.2d 316 (2019). The issue there was whether a trial court violated the "defendant's Sixth Amendment right to confront witnesses against him by limiting

---

[1] Defendant also asserts that the trial court violated his rights under Article I, Section 23 of the state constitution. *See* N.C. Const. art. I, § 23 ("In all criminal prosecutions, every person charged with crime has the right . . . to confront the accusers and witnesses with other testimony . . . ."). But he does not argue that the provision offers greater protection than the Sixth Amendment's Confrontation Clause, and he relies only on cases interpreting that Amendment. Our analysis therefore focuses only on the federal Constitution.

[2] At the same time, Defendant acknowledges later in his briefing that this Court reviews "issues raised by [an] appellant regarding a trial court's rulings on cross-examination . . . for an abuse of discretion."

[his] cross-examination of the State's . . . witness." *Id.* at 440, 831 S.E.2d at 317. "In general," the Court explained, "we review a trial court's limitation on cross-examination for abuse of discretion." *Id.* at 444, 831 S.E.2d at 319 (citing *State v. McNeil*, 350 N.C. 657, 678, 518 S.E.2d 486, 499 (1999)). And "[i]f the trial court errs in excluding witness testimony showing possible bias, thus violating the Confrontation Clause, the error is reviewed to determine whether it was harmless beyond a reasonable doubt." *Id.* We review Defendant's challenge accordingly.

### 2. *Analysis*

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. A defendant exercises that right through cross-examination, *Bowman*, 372 N.C. at 444, 831 S.E.2d at 319-20—"the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). And a central function of cross-examination is to expose a witness's "possible biases, prejudices, or ulterior motives . . . as they may relate directly to issues or personalities in the case." *Id.* at 316 (citation omitted). That function is "a proper and important" one, vital to the "constitutionally protected right of cross-examination." *Id.* at 316-17.

But that right can be limited. Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause, our Supreme Court has said, "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *McNeil*, 350 N.C. at 677, 518 S.E.2d at 498 (citation omitted).

Our task is twofold. We determine first "whether the trial court violated [D]efendant's Sixth Amendment right by limiting his cross-examination" of Montgomery—and if so, "whether that error was harmless beyond a reasonable doubt." *Bowman*, 372 N.C. at 444, 831 S.E.2d at 320. Before we get there, though, we address a few preliminary matters.

### a. *Preliminary Observations*

Several of Defendant's factual claims on appeal lack any foundation in the transcripts. That matters because, to state a Confrontation Clause violation, Defendant must show he "was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Van Arsdall*, 475 U.S. at 680 (citing *Davis*, 415 U.S. at 318). A defendant cannot meet that burden by pointing to cross-examination the trial court never limited—or, still further afield, to cross-examination about arrangements that never existed.

To begin, Defendant claims that the trial court "did not require the State to

disclose" information about Montgomery's pretrial release and denied him the chance to inquire "why . . . Montgomery was in jail and/or why she was on a pre-trial release through Cleveland County's electronic monitoring program." But Montgomery was never on pretrial release in Cleveland County. As defense counsel told the court before jury selection, Montgomery's release was "[o]ut of Gaston," and counsel could "tell" that "she was on a monitor [there] because she ha[d] violations and charges for interfering." Montgomery's trial testimony confirmed it: Her monitor, she said, arose from Gaston County "domestic violence charges with [her] boyfriend" and the related pretrial release there. There was no Cleveland County pretrial release for Defendant to address in Montgomery's cross-examination.

If Defendant's argument is instead about Montgomery's *Gaston County* monitor, the record still contradicts him. Defense counsel asked Montgomery whether her monitor charge arose "in Gaston County," and Montgomery said yes. The trial court sustained a single objection—to counsel's question asking why Montgomery was on a monitor. But counsel's very next question drew the answer tying the charge to Gaston County "domestic violence charges" and Montgomery's Gaston County pretrial services. The monitor, the underlying charges, and the pretrial services all belonged to Gaston County, and no party suggested otherwise at trial.

Defendant also asserts that the CCSD "wanted to use . . . Montgomery as a confidential informant," that she "was given an opportunity to work as [a]

[c]onfidential [i]nformant in Cleveland County," and that "it is unknown what charges . . . Montgomery was working off in Cleveland County." But Montgomery worked as an informant for the GCPD, not the CCSD. Defendant rests his contrary theory "[u]pon [his] information and belief," but the transcripts say otherwise.

Montgomery testified on cross she "started working as a confidential informant for [the GCPD]" days after she got "busted in the hotel room." She had filled out a GCPD informant packet and received roughly $200 per job. Omandi said as much himself. When Montgomery asked about working off her Cleveland County charges, he told her that GCPD could not help: She would have to "contact Cleveland County since they [we]re the ones who charged her for that." And defense counsel, at the pretrial hearing, described Montgomery's informant work—including the "[fourteen] other targets" after Defendant's arrest—as work "for Gaston County."

In short, the trial court did not prohibit cross-examination about a Cleveland County pretrial release program, nor about Cleveland County informant work, because neither existed to be cross-examined about. Defendant's Confrontation Clause arguments, to the extent they depend on those theories, fail.[3]

---

[3] Defendant also contends that the State should have disclosed more: As he puts it, "[d]espite implicitly admitting it had an arrangement, the State never disclosed any delays, promises, or incentive . . . it made with . . . Montgomery, or any threats made, or any type of coercion used against" her "to get her to cooperate and[ ] testify for the State." In a single sentence, Defendant adds that this non-disclosure "denied the basic information required by *Brady* . . . to be able to effectively cross-examine the State's witness's against him." But Defendant has not developed the *Brady* argument. His briefing on this issue is a lone *Brady* citation with no attendant analysis. *See* N.C. R. App. P. 28(b)(6) ("Issues . . . in support of which no reason or argument is stated, will be taken as abandoned."). So we do not reach it.

b. *Merits*

Defendant's remaining arguments, those grounded in the record, concern three topics on which he says the trial court improperly limited Montgomery's cross-examination. In his view, Montgomery was a "vulnerable" witness under *Davis*, 415 U.S. at 318, subject to several sources of State pressure: (1) the risk that the State would prosecute her for the methamphetamine seized from her in February 2022 and for any misconduct during her work as a GCPD informant; (2) her Gaston County pretrial supervision and electronic monitoring, both tied to unrelated domestic violence charges; and (3) her probationary status. The trial court's limits on each, Defendant argues, thwarted his "ability to contest the credibility of the witnesses against him and to demonstrate the biases of those witnesses."

"Generally, a defendant may not cross-examine a witness regarding pending charges." *Bowman*, 372 N.C. at 444, 831 S.E.2d at 320 (citation omitted). But the Confrontation Clause carves out an exception when a "defendant seeks to show bias or undue influence by the [S]tate because of the [witness's] pending charges." *Id.* (citing *Davis*, 415 U.S. at 315). As we have explained, "[t]he constitutional right to cross-examine a witness includes the right to examine that witness about any pending criminal charges or any criminal convictions for which he is currently on probation." *State v. Ferguson*, 140 N.C. App. 699, 705, 538 S.E.2d 217, 222 (2000) (citing *State v. Prevatte,* 346 N.C. 162, 163-64, 484 S.E.2d 377, 378 (1997)). That's because "the jury is entitled to consider, in evaluating a witness's credibility, the fact

the State has a 'weapon to control the witness.' " *Id.* (quoting *Prevatte*, 346 N.C. at 164, 484 S.E.2d at 378).

The scope of permissible cross-examination to show bias, though, depends on where the witness faces the pending charges. *See State v. Murrell*, 362 N.C. 375, 404, 665 S.E.2d 61, 80 (2008) (holding that where "charges pending against [the witness] were being handled in a different jurisdiction, and [the] defendant provide[d] no supporting documentation of any discussion between the two district attorneys' offices," the defendant did not show "that [the witness's] testimony was biased"). As our Supreme Court stated in *Bowman*:

> potential bias or influence is present when a witness faces pending charges in the same jurisdiction he testifies in, allowing a defendant to cross-examine the witness concerning the charges. . . . However, where a witness faces pending charges in a separate jurisdiction than the one he testifies in, a defendant must "provide supporting documentation of a discussion between the two district attorneys' offices to demonstrate that the witness's testimony is biased."

*Bowman*, 372 N.C. at 444-45, 831 S.E.2d at 320 (quoting *Murrell*, 362 N.C. at 404, 665 S.E.2d at 80 (internal brackets omitted)).

At the outset, we take judicial notice that Gaston County is in a different prosecutorial district than Cleveland County, where this case was tried. *See State v. Alston*, 233 N.C. App. 152, 161, 756 S.E.2d 70, 76 (2014) (taking judicial notice that the trial county and other-district counties "are each located in different prosecutorial districts"). Two of the three sources of pressure Defendant identifies came from

- 13 -

Gaston County, not Cleveland. Montgomery's informant work—the fourteen controlled buys, the $200 payments, the alleged breach of her informant agreement—was for the GCPD. And her electronic monitoring and pretrial supervision stemmed from her Gaston County domestic violence charges. Cleveland County prosecuted this case.

That matters because the rule permitting cross-examination about pending charges rests on a specific premise: that the charges give the prosecution a "weapon to control the witness." *Prevatte*, 346 N.C. at 164, 484 S.E.2d at 378. When the charges sit in another district, that premise fails. A Cleveland County prosecutor has no leverage over a witness through a Gaston County charge, a Gaston County informant arrangement, or Gaston County pretrial supervision—because none of those things is his to control. *See Murrell*, 362 N.C. at 404, 665 S.E.2d at 80.

Defendant has a response. He theorizes an "implicit agreement" between Montgomery and the GCPD: that she would avoid prosecution for the methamphetamine seized from her in February 2022 in exchange for cooperating in the investigation of Defendant. But even accepting that theory, it shows only that the Gaston County District Attorney's office held leverage over Montgomery—not the Cleveland County District Attorney's office that prosecuted this case. Defendant offered no evidence of coordination between the two offices. And Montgomery denied receiving any benefit for her testimony. The Confrontation Clause did not require the trial court to permit more cross-examination about the details of Montgomery's

Gaston County informant work, her Gaston County electronic monitoring, or her Gaston County pretrial supervision. *See id.; see also Alston*, 233 N.C. App. at 161, 756 S.E.2d at 76 (holding that the trial court did not abuse its discretion by limiting cross-examination about different-district pending charges where the defendant "failed to provide any evidence of discussions between" the district attorneys' offices and the witnesses "did not believe testifying in th[e] case could help them in any way with proceedings in other counties").

Montgomery's Cleveland County trafficking charge stood on different footing—it arose in the same jurisdiction where she was now testifying, which *Murrell* recognized as probative of bias, 362 N.C. at 404, 665 S.E.2d at 80. The trial court allowed cross-examination about that charge. Montgomery testified on cross she had been "charged with trafficking in Cleveland County in meth" with a "little over an ounce" the week before trial and that she had been in Cleveland County custody because of that charge. The trial court's treatment of Montgomery's Cleveland County trafficking charge raises no Confrontation Clause concern.

That leaves Defendant's argument on Montgomery's probationary status.[4]

---

[4] Defendant also posits that the trial court erred in preventing Omandi from identifying "what crimes . . . Montgomery was charged with in Cleveland County." But the trial court sustained one objection to Omandi's testimony about Montgomery's *outstanding warrants*—not her *pending charges*. Every Confrontation Clause case Defendant cites—indeed, every case concerning this right in our jurisprudence—turned on a defendant's right to cross-examine the biased witness herself about her own pending charges. *See, e.g., State v. Ferguson*, 140 N.C. App. 699, 705, 538 S.E.2d 217, 222 (2000) (noting "the right to examine *that witness* about any pending criminal charges" (emphasis added)). Defendant's claim is different: he asked to cross-examine one witness about another witness's

When defense counsel asked Montgomery whether she was "currently on probation," the State objected, and the trial court sustained, calling the question "[i]mproper." Relying primarily on *Davis*, *Prevatte*, and *Bowman*, Defendant argues that the exclusion violated his right to effective cross-examination.

But in each of those cases, the trial court foreclosed the defendant's only meaningful path to showing bias. The trial court in *Davis* barred cross-examination about the witness's probation following a juvenile-delinquency adjudication, leaving defense counsel "unable to make a record from which to argue why" the witness might be biased. *Davis*, 415 U.S. at 310-11, 318. The trial court in *Prevatte* went further, blocking every question about the witness's nine pending charges and any promise or expectations about "the charges in exchange for his testimony." *Prevatte*, 346 N.C. at 163, 484 S.E.2d at 378. And the trial court in *Bowman* prohibited every question about whether a deal had been finalized "concerning [the witness's] pending charges," whether the witness thought she was "going to get anything out of it," and whether she was "aware of any current considerations she might have [had] for her pending charges." *Bowman*, 372 N.C. at 447, 831 S.E.2d at 321. Each defendant was thus "denied the right of effective cross-examination," *Davis*, 415 U.S. at 318—not because every question drew an objection, but because the questions that mattered did. *Id.; see also Bowman*, 372 N.C. at 446, 831 S.E.2d at 321 (recognizing a violation where

---

outstanding warrants. That right our cases have not recognized. Defendant had the right to confront Montgomery—and he exercised it, questioning her directly and at length about her charges.

the trial court imposed "a *significant limitation* on [the] defendant's cross-examination of the State's principal witness," even short of a total denial (citations omitted)).

This case is different. The trial court gave defense counsel "wide latitude" to expose Montgomery's "alleged bias and motive" in testifying for the State, and defense counsel used it. *McNeil*, 350 N.C. at 677, 518 S.E.2d at 499. Counsel questioned Montgomery about the pending Cleveland County trafficking charge in detail—its substance, its timing, and her custody on that charge the week before trial. And the trial court allowed counsel to cross-examine Montgomery about her two pending Gaston County charges and her prior Gaston County convictions. *See* N.C. Gen. Stat. § 8C-1, Rule 609 (2023) (permitting the admission of prior convictions to attack a witness's credibility).

Counsel also asked Montgomery directly whether she was "testifying to benefit [her]self." The State objected, and the trial court overruled. Montgomery denied any benefit: She was "subpoenaed by both sides" and had "no ill will towards either side[ ] or part[y]." Counsel pressed again—"you get some benefit for that, don't you?"—and the court overruled again. Montgomery denied any benefit a second time.

Still, Defendant sees the probation exclusion as decisive. According to his reading of *Davis*, any limitation on cross-examination into a witness's probationary status is a Confrontation Clause violation. And because Montgomery was under active State supervision, he contends, she was especially "vulnerable" to State

- 17 -

pressure. But *Davis* does not sweep that broadly. The Supreme Court's holding was fact-bound: "*On these facts*," the Court wrote, the defendant "should have been permitted to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the [witness's] reliability." *Davis*, 415 U.S. at 318 (emphasis added). Those facts were narrow. The defendant in *Davis* faced one avenue to show bias—the witness's probation—and the trial court closed it. *Id.* Here, defense counsel developed multiple avenues for the same showing: the Cleveland County trafficking charge, the informant work for GCPD, the motive questions, and the prior convictions. Excluding probation would have added another form of State supervision to the record; it would not have given the jury a reason to doubt Montgomery's impartiality that it otherwise lacked. That is a meaningful difference under *Davis*.

In sum, the trial court allowed defense counsel to expose Montgomery's "alleged bias and motive" on cross-examination, including through questioning about her pending Cleveland County trafficking charge, her custody on that charge, her informant work for GCPD, her motive to testify, and her prior convictions. *McNeil*, 350 N.C. at 677, 518 S.E.2d at 499. The narrow limits the court enforced fell within its "wide latitude . . . to impose reasonable limits on . . . cross-examination." *Van Arsdall*, 475 U.S. at 679. The trial court did not abuse its discretion. *See McNeil*, 350 N.C. at 678, 518 S.E.2d at 499.

**B. Jury Instructions**

At the charge conference, defense counsel asked the trial court to give North Carolina Pattern Jury Instruction 104.21. *See* N.C.P.I. – Crim. 104.21 (Testimony of a Witness with Immunity or Quasi-Immunity). That instruction states:

> There is evidence which tends to show that a witness testified [under a grant of immunity] [under an agreement with the prosecutor for a charge reduction in exchange for the testimony] [under an agreement with the prosecutor for a recommendation for sentence concession in exchange for the testimony]. If you find that the witness testified for this reason, in whole or in part, you should examine this testimony with great care and caution. If, after doing so, you believe the testimony, in whole or in part, you should treat what you believe the same as any other believable evidence.

*Id.* (footnote omitted). The trial court denied the request, reasoning that "the instruction doesn't fit" and "almost implies something that's not in evidence." Instead, it gave North Carolina Pattern Jury Instructions 104.20 and 104.30. *See* N.C.P.I. – Crim. 104.20 (Testimony of Interested Witness), 104.30 (Informer or Undercover Agent).

The court instructed the jury, in relevant part:

> You may find that a witness is interested in the outcome of this trial. You may take the witness's interest into account in deciding whether to believe a witness. If you believe the testimony of the witness in whole or in part, you should treat what you believe the same as any other believable evidence.
>
> You may find that a State's witness is interested in the outcome of this case because of the witness–witness's activities as a confidential informant. If so, you should examine the testimony of the witness with care and

- 19 -

caution. After doing so, if you believe the testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

Defendant argues that the trial court erred by declining pattern instruction 104.21 and giving 104.20 and 104.30 instead. In his view, Montgomery had "quasi-immunity" because the State declined to prosecute her in Gaston County in exchange for her cooperation. And so the trial court had to instruct the jury to "examine [her] testimony with great care and caution" under pattern instruction 104.21. We disagree.

### 1. Standard of Review

As mentioned, Defendant requested pattern jury instruction 104.21 orally at the charge conference. *See generally State v. Puckett*, 54 N.C. App. 576, 581, 284 S.E.2d 326, 329 (1981) ("An instruction to scrutinize the testimony of a witness on the grounds of interest or bias relates to a subordinate feature of a criminal case, and the trial court is not required to charge as to such matters in the absence of a request for special instructions." (citation omitted)). A request for a special jury instruction must be (1) "[i]n writing," (2) "[e]ntitled in the cause," and (3) "[s]igned by counsel submitting them." N.C. Gen. Stat. § 1-181(a) (2023). When a request is not submitted in writing and signed as the statute requires, "it is within the discretion of the [trial] court to give or refuse such instruction." *State v. Mewborn*, 178 N.C. App. 281, 292, 631 S.E.2d 224, 231 (2006) (citation omitted). We therefore review the trial court's denial of Defendant's oral request for abuse of discretion. *Id.*

## 2. *Preservation*

The State argues that Defendant waived appellate review under *State v. White*, 349 N.C. 535, 570, 508 S.E.2d 253, 275 (1998), which declared that "[w]here a defendant tells the trial court that he has no objection to an instruction, he will not be heard to complain on appeal." It points to two exchanges between the trial court and defense counsel during the charge conference. The first was the court's explanation for declining pattern instruction 104.21:

> The [c]ourt: The informant and the interested witness has more of a fit. That almost implies something that's not in evidence so –
>
> . . . .
>
> The [c]ourt: –that's why I didn't include [pattern jury instruction 104.201].
>
> [The prosecution]: I think the instruction for confidential informant takes cares of that.
>
> The [c]ourt: Yeah.
>
> [Defense counsel]: Thank you, sir.
>
> The [c]ourt: Yeah.

The second came at the close of the charge conference:

> The [c]ourt: So we're satisfied with the verdict sheets?
>
> [Defense counsel]: Yes, sir.
>
> The [c]ourt: Not asking for any additional instructions?
>
> [The prosecution]: No, sir.
>
> [Defense counsel]: No, sir.

Because defense counsel "affirmatively approved the proposed jury instruction" and "fail[ed] to object or make any attempt to clarify the instruction prior to submission to the jury," the State maintains, Defendant "waived any appeal over the content of the instruction." We disagree.

Our Supreme Court rejected that reading of *White* in *State v. Hooper*, 382 N.C. 612, 879 S.E.2d 549 (2022). There, the defendant initially agreed to the trial court's proposed instructions at the charge conference. *Id.* at 618, 879 S.E.2d at 553. But the next morning, he reversed course and requested a self-defense instruction. *Id.* at 618-19, 879 S.E.2d at 553-54. The trial court denied the request. *Id.* at 619, 879 S.E.2d at 554. On appeal, the issue was whether that sequence preserved the defendant's jury-instruction challenge. *Id.* at 613, 879 S.E.2d at 550. The Court held that it did. *Id.* at 624, 879 S.E.2d at 557. North Carolina Rule of Appellate Procedure 10(a)(2) requires a party to object to the jury charge "before the jury retires to consider its verdict," and the defendant had requested the instruction before the trial court gave its charge. *Id.* at 624-25, 879 S.E.2d at 557. That was enough. The Court said that Rule 10(a)(2)'s purpose "is met when a request to alter an instruction has been submitted and the trial judge has considered and refused the request." *Id.* at 625, 879 S.E.2d at 557 (quoting *Wall v. Stout*, 310 N.C. 184, 189, 311 S.E.2d 571, 575 (1984)). Once the trial court has ruled, "further objections [are] not only useless but wasteful of the court's time." *Id.*

*Hooper* distinguished *White*. In *White*, the Court explained, the defendant had

agreed to the trial court's proposed jury instruction, offered no alternative language, and did not object after the court delivered the instructions. *Id.* at 625 n.3, 879 S.E.2d at 558 n.3 (citing *White*, 349 N.C. at 569). The trial court thus "had no basis for believing that [the] defendant objected to the manner in which it had instructed the jury." *Id.* at 626 n.3, 879 S.E.2d at 558 n.3. But in *Hooper*, the trial court "was presented with and rejected a request" for a self-defense instruction. *Id.*

So too here. Defense counsel asked for pattern instruction 104.21 during the charge conference itself. The trial court considered and rejected the request, opining that the instruction did not "fit" and "almost implie[d] something that[ ] [was] not in evidence." The court was on notice of defense counsel's position from that point forward, and counsel was not required to renew the objection after the court ruled. *See id.* at 625-26, 879 S.E.2d at 557-58; *see also State v. Smith*, 311 N.C. 287, 290, 316 S.E.2d 73, 75 (1984) (stating that the defendant is not required "to repeat his objection to the jury instructions, after the fact, in order to properly preserve his exception for appellate review"). If anything, Defendant's preservation argument is stronger than the one in *Hooper*. The *Hooper* defendant initially agreed to the instructions and requested his self-defense instruction only the next morning, *Hooper*, 382 N.C. at 618, 879 S.E.2d at 553—here, however, Defendant requested 104.21 at the charge conference itself. This issue is preserved.

### 3. Merits

When a defendant requests "a special instruction, which is correct in itself and

supported by evidence, the court must give the instruction at least in substance." *State v. Carwile*, 297 N.C. App. 145, 157, 909 S.E.2d 913, 924 (2024) (citation omitted). If the trial court refuses "to instruct the jury in accordance with a criminal defendant's request," the trial court's judgment will not be reversed "unless the error in question has prejudiced the defendant, such that there is a reasonable possibility that, had the trial court given the [requested instruction], a different result would have been reached at trial." *Id.* at 158, 909 S.E.2d at 924 (internal quotation marks and citation omitted).

As noted earlier, pattern jury instruction 104.21 applies when "there is evidence which tends to show that a witness testified [under a grant of immunity] [under an agreement with the prosecutor for a charge reduction in exchange for the testimony] [under an agreement with the prosecutor for a recommendation for sentence concession in exchange for the testimony]." N.C.P.I. – Crim. 104.21 (footnote omitted). When the evidence supports one of those three arrangements, the instruction tells the jury that "[i]f [it] find[s] that the witness testified for this reason, in whole or in part, [it] should examine this testimony with great care and caution." *Id.* Each alternative tracks a specific statutory provision. *See* N.C. Gen. Stat. §§ 15A-1052 (2023) (Grant of immunity in court proceedings), 15A-1054 (2023) (Charge reductions or sentence concessions in consideration of truthful testimony). The instruction is "supported by the evidence," *Carwile*, 297 N.C. App. at 157, 909 S.E.2d at 924, only when one of those three arrangements is shown. *See Mewborn*, 178 N.C.

App. at 292, 631 S.E.2d at 231-32.

*Mewborn* illustrates the point. There, the State's witness had entered a plea agreement that dismissed nine narcotics charges in exchange for his guilty plea on a tenth. *Id.* at 285, 631 S.E.2d at 227. At the time of the defendant's trial, the witness had not been sentenced. *Id.* The defendant requested pattern instruction 104.21, and the trial court denied the request, giving pattern instructions 104.20 and 104.30—the same two instructions given here. *Id.* at 291, 631 S.E.2d at 231.

On appeal, we concluded that pattern instruction 104.21 "was not supported by the evidence":

> [N]o evidence was presented at trial that [the witness] testified under an agreement for a charge reduction or an agreement for a sentencing concession. [The] [d]etective . . . testified that three of [the witness's] charges were dismissed pursuant to a plea agreement with the State, but that there was no agreement between [the] [d]etective . . . and [the witness] that resulted in the dismissals. [The] [d]etective . . . testified he advised [the witness] that "it would look better if he . . . cooperated with the police, that way [the detective] could go to court and tell the judge that [the witness] had done wrong but also had done things to try to help himself out." At the time of [the] defendant's trial, [the witness] had not yet been sentenced for his conviction, and there was no evidence of a sentencing concession. [The witness] testified that no one made promises to him in exchange for his testimony.

*Id.* at 292, 631 S.E.2d at 231-32. Because there was no evidence that the witness "had been granted immunity or quasi-immunity for his testimony against" the defendant, we held that the trial court did not "abuse[ ] its discretion in denying [the]

- 25 -

defendant's requested special jury instruction." *Id.* at 292, 631 S.E.2d at 232.

Here, Defendant concedes that the pattern instruction's first and third arrangements do not apply. *See* N.C.P.I. – Crim. 104.21. He does not argue that Montgomery testified under a grant of immunity—and in fact acknowledges that "Montgomery did not receive an actual grant of immunity in any of her cases." Nor does he identify any evidence of a sentence-concession arrangement.

That leaves pattern instruction 104.21's "charge reduction" circumstance: testimony given "under an agreement with the prosecutor for a charge reduction in exchange for the testimony." *Id.* Defendant contends that Montgomery had "an arrangement with the State to testify in these matters" under which "she would not be prosecuted for trafficking methamphetamines in Gaston County, in exchange for assistance in charging and prosecuting . . . Defendant with these crimes in Cleveland County."

The record, however, shows no such arrangement. Omandi testified that he reported Montgomery's "substantial assistance" in his investigation of Defendant to the Gaston County Assistant District Attorney, who then declined to prosecute her. But none of that shows Montgomery testified "in exchange for" Gaston County's decision not to prosecute. *Id.*; *see also Mewborn*, 178 N.C. App. at 292, 631 S.E.2d at 231. Omandi and Montgomery both denied any such exchange. "There was no deal made," Omandi testified, and "[n]o . . . promises" had been made to Montgomery. And Montgomery emphasized that she was "subpoenaed on both sides to come to court"

and had "no ill will towards either side[ ] or part[y]"; asked whether she was "getting any benefit for testifying," she answered, "No. I'm just subpoenaed to be here."

Defendant's fallback rests on the pattern instruction's title: "Testimony of Witness with Immunity or Quasi-Immunity." N.C.P.I. – Crim. 104.21. Montgomery, Defendant surmises, "may have received a quasi-grant of immunity"—"something that has some, but not all, of the characteristics of an actual grant of immunity." He describes her situation as "very similar to a grant of immunity, with the exception being that . . . [she] was not compelled to testify in these matters by a [s]uperior [c]ourt order." The "quasi-immunity" label does not fill the gap. Our cases applying pattern instruction 104.21 ask whether the record shows one of the three arrangements listed in the instruction's text—immunity, charge reduction, or sentence concession. *See*, *e.g.*, *Mewborn*, 178 N.C. App. at 292, 631 S.E.2d at 231-32. The record here shows none of them. The instruction therefore "was not supported by the evidence," and the trial court did not abuse its discretion in declining to give it. *Id.* at 292, 631 S.E.2d at 231, 232.

## IV.   Conclusion

We hold that the trial court did not abuse its discretion in either limiting Defendant's cross-examination of Montgomery or denying his oral request for North Carolina Pattern Jury Instruction 104.21. Defendant received a fair trial, free from prejudicial error.

NO ERROR.

Judges FLOOD and FREEMAN concur.

Report per Rule 30(e).